James **JARRELL**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 06A05–0506–CR–356.

Court of Appeals of Indiana.

Aug. 24, 2006.

John D. Fierek, Voyles Zahn Paul Hogan & Merriman, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

James Jarrell appeals his conviction for operating a motor vehicle with a breath alcohol concentration of at least .15 gram per 210 liters of breath (operating with .15 BAC), a Class A misdemeanor. We affirm.

### Issues

The issues before us are:

I. whether Jarrell's rights under the Sixth Amendment to the United States Constitution were violated by introduction into evidence of the certificate attesting that the machine used to test his breath for alcohol had been inspected and was accurate; and

II. whether there is sufficient evidence to support his conviction.

### Facts

The underlying facts here are largely undisputed. On July 13, 2004, at 9:15 p.m., Deputy Randy Wise of the Boone County Sheriff's Department pulled over Jarrell's vehicle for speeding. Deputy

Wise noted that Jarrell was exhibiting signs of intoxication, and he read Jarrell the implied consent law and Jarrell agreed to submit to a breath test. Because Deputy Wise is not a certified breath test operator, he transported Jarrell to the Boone County Jail. There, at 10:00 p.m., Officer William Scott of the Lebanon Police Department, a certified breath test operator, tested Jarrell's breath using a BAC DataMaster machine. The machine reported a BAC of .16.

The State charged Jarrell with Class A misdemeanor operating while intoxicated, Class A misdemeanor operating with .15 BAC, and speeding. Jarrell stipulated to the speeding allegation, and the State dismissed the operating while intoxicated charge. On May 5, 2005, a bench trial was conducted on the remaining operating with .15 BAC charge. Over Jarrell's Sixth Amendment objections, the trial court allowed into evidence a certificate from the State Department of Toxicology stating that the DataMaster machine used by Officer Scott had been inspected and certified as being in good operating condition on June 22, 2004. Officer Scott testified at trial but lacked knowledge regarding the inspection of the DataMaster; the person who tested the machine and prepared the certificate did not appear at trial. The trial court found Jarrell guilty of Class A misdemeanor operating with .15 BAC. He now appeals.

### Analysis

#### I. Sixth Amendment

■ Jarrell's Sixth Amendment argument is two-fold, in that he challenges denial of his right to confrontation under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), as well as his general right to cross-examine adverse witnesses under different precedent. We first address *Crawford*. Under the rule announced in that case, the Sixth Amendment does not permit the admission of testimonial statements of a witness who does not appear at trial unless he or she is unavailable to testify and the defendant had a prior opportunity for cross-examination of the witness. *Id.* at 53–54, 124 S.Ct. at 1365. Here, the preparer of the certificate assuring that the DataMaster used on Jarrell was tested and accurate did not appear at trial, and the State does not contest that the preparer was unavailable to testify or that Jarrell had a prior opportunity to cross-examine him or her. Thus, as with many post-*Crawford* cases, the dispositive issue here is whether the statements in the certificate were "testimonial" and its introduction was barred by the Sixth Amendment.

*Crawford* did not offer a comprehensive definition of "testimonial." *Id.* at 68, 124 S.Ct. at 1374. The Court did state, "Whatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations. These are the modern practices with closest kinship to the abuses at which the Confrontation Clause was directed." *Id.* Elsewhere, the Court described "testimonial" statements as:

> ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial. . . .

*Id.* at 51–52, 124 S.Ct. at 1364 (quotations and citations omitted).

Recently, the Supreme Court revisited the question of what constitutes "testimonial" statements under *Crawford* in *Davis v. Washington,* —— U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). That opinion, combined with *Hammon v. Indiana,* addressed two domestic violence cases in which out-of-court statements of the alleged victims were introduced at trial. In *Davis,* the statements were made to a 911 operator, while in *Hammon* they were made to a police officer who had arrived at the scene and was asking questions of the alleged victim. The Court offered the following clarification of what is "testimonial" in addressing the cases before it:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at ——, 126 S.Ct. at 2273–74. Applying this rule to the cases at hand, the Court held that the 911 statements in *Davis* were not "testimonial," while the on-the-scene statements in *Hammon* were. *Id.* at ——, 126 S.Ct. at 2277, 2279.

It appears to us that *Davis/Hammon* is of little or no assistance in deciding the case before us. Those cases were highly fact-specific and generated a rule related to a precise, but frequently recurring, scenario: that of 911 calls or statements made by alleged victims to police who are "first arrivers" in response to a 911 call. The DataMaster certificate in this case was not generated within the context of an ongoing emergency or recently ended emergency and it was not generated in response to "police interrogation." That is not to say the certificate could not possibly be "testimonial," but we must look at *Crawford* and other cases, not *Davis/Hammon,* for the answer.

Different panels of this court have addressed the argument Jarrell makes regarding whether breath test machine certifications are "testimonial" in two cases: *Napier v. State,* 820 N.E.2d 144 (Ind.Ct. App.2005), *modified in part on rehearing,* 827 N.E.2d 565 (Ind.Ct.App.2005), *trans. denied, cert. denied;* and *Rembusch v. State,* 836 N.E.2d 979 (Ind.Ct.App.2005), *trans. denied.* We concluded for the first time in *Napier* that such certificates are not "testimonial" and *Crawford* does not limit their admissibility. *Napier,* 820 N.E.2d at 149–50. We stated in our opinion on rehearing that certification of breath test machines bear "no similarity to the type of evidence that the Supreme Court labeled as testimonial." *Napier,* 827 N.E.2d at 569. We also observed that the type of evidence that appeared to concern the Court in *Crawford* was "evidence that it is gathered in an investigative or prosecutorial setting." *Id.*

We reiterated *Napier*'s holding in *Rembusch,* observing that breath test machine certificates are not prepared at a judicial proceeding or during police interrogation, and they are not sworn affidavits and do not contain formalized testimonial materials. *Rembusch,* 836 N.E.2d at 982. Breath test machines also are not certified for purposes that relate to any particular case; instead, the certificates serve an administrative function and are prepared in a routine manner. *See id.*

Since our first opinion in *Napier,* a number of courts in other jurisdictions have addressed the identical question of whether certificates attesting to the accuracy of a breath test machine are "testimonial" in nature under *Crawford.* The overwhelming majority of these courts have ruled

consistently with *Napier* and *Rembusch.* Some of these opinions provided additional justifications for concluding that such certificates are not "testimonial" that we did not explicitly discuss. For example, the Court of Appeals of Oregon has stated, "Unlike police or prosecutorial interrogators, the technicians [who certify breath test machines] have no demonstrable interest in whether the certifications produce evidence that is favorable or adverse to a particular defendant. Thus, the function of the technicians differs significantly from that of the public officers whose actions or methodology implicated confrontation issues at common law." *State v. Norman,* 203 Or.App. 1, 125 P.3d 15, 19 (2005), *review denied.*

The Oregon court also notes that per *Crawford,* "the Sixth Amendment is implicitly deemed to incorporate the hearsay exceptions established at the time of the founding, ... 'for example, business records or statements in furtherance of a conspiracy.'" *Id.* (quoting *Crawford,* 541 U.S. at 56, 124 S.Ct. at 1367). The court reasoned that breath test machine certificates should be considered akin to "business records," which were not considered "testimonial" under the common law at it existed at the time of the Sixth Amendment's ratification. *Id.* In a similar vein, the Arizona Court of Appeals observed that periodic maintenance and certification of breath test machines is mandated as a matter of course by statute and regulations and the production of breath test machine certificates is, therefore, required by the ordinary course of business, regardless of whether any particular machine is used in connection with any driving while intoxicated investigation. *Bohsancurt v. Eisenberg,* 212 Ariz. 182, 129 P.3d 471, 476 (App.2006).

We do acknowledge that breath test machine certificates might be said to have been prepared "in anticipation of litigation" in one sense, in that it is clear that such certificates may be used in future drunk driving prosecutions. It also is true that certification of a breath test machine is a foundational requirement for the introduction of a result from that machine into evidence. *See* Ind.Code § 9–30–6–5(d). However, certification of breath-test machines is removed from the direct investigation or direct proof of whether any particular defendant has operated a vehicle while intoxicated; the certificates are not prepared in anticipation of litigation in any particular case or with respect to implicating any specific defendant. The periodic certification of breath test machines—every 180 days—is mandated by the Indiana Code and accompanying regulations, regardless of whether the machine is ever actually used in an OWI investigation. *See* I.C. § 9–30–6–5(a)(2); Ind. Admin. Code tit. 260, r. 1.1–2–1 & –2.

▉ As such, and in accordance with the number of jurisdictions that have agreed with our holdings in *Napier* and *Rembusch,* we adhere to our holding in those cases that breath test machine certificates are not "testimonial" evidence whose admissibility is governed by *Crawford. See also, e.g., Pierce v. State,* 278 Ga.App. 162, 628 S.E.2d 235 (2006); *Commonwealth v. Walther,* 189 S.W.3d 570 (Ky.2006); *State v. Carter,* 326 Mont. 427, 114 P.3d 1001 (2005); *State v. Godshalk,* 381 N.J.Super. 326, 885 A.2d 969 (Law Div.2005); *Green v. DeMarco,* 11 Misc.3d 451, 812 N.Y.S.2d 772 (N.Y.Sup.Ct.2005); *Luginbyhl v. Commonwealth,* 48 Va.App. 58, 628 S.E.2d 74 (2006).[1]

---

**1.** It appears there are only two cases in the country that have reached a contrary result: *Shiver v. State,* 900 So.2d 615 (Fla.Ct.App.

2005) and *People v. Orpin,* 8 Misc.3d 768, 796 N.Y.S.2d 512 (2005). Within New York itself,

■ We now turn to the second part of Jarrell's Sixth Amendment argument, namely whether he was denied his right to cross-examine adverse witnesses.[2] Jarrell's specific complaint is that when he attempted to question Officer Scott regarding certification of the DataMaster, Officer Scott testified that he had no knowledge regarding the certification process.

■ The Confrontation Clause of the Sixth Amendment has long been read as securing an adequate opportunity to cross-examine adverse witnesses. *United States v. Owens*, 484 U.S. 554, 557, 108 S.Ct. 838, 841, 98 L.Ed.2d 951 (1988). However, there is no guarantee of " 'cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " *Kentucky v. Stincer*, 482 U.S. 730, 739, 107 S.Ct. 2658, 2664, 96 L.Ed.2d 631 (1987) (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, 294, 88 L.Ed.2d 15 (1985)). The right to cross-examination is satisfied if the defendant has the opportunity to bring out such matters as a witness' bias, lack of care and attentiveness, poor eyesight, or even bad memory. *Owens*, 484 U.S. at 559, 108 S.Ct. at 842. "[T]he right to confrontation is a trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 52, 107 S.Ct. 989, 999, 94 L.Ed.2d 40 (1987) (plurality opinion of Powell, J.). "Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial to question witnesses." *Id.* at 53, 107 S.Ct. at 999.

Jarrell fails to present an argument that he was prevented from asking Officer Scott any pertinent questions. Instead, his argument comes down to a complaint that Officer Scott's answers to those questions were unsatisfactory. That, however, does not establish the existence of a Confrontation Clause violation; at best, it merely demonstrates that the cross-examination of Officer Scott was not effective "in whatever way, and to whatever extent," Jarrell might have wished. *See Stincer*, 482 U.S. at 739, 107 S.Ct. at 2664. Jarrell was able to bring out that Officer Scott knew nothing of the DataMaster certification process, which satisfied the purpose of the Confrontation Clause. *See Owens*, 484 U.S. at 559, 108 S.Ct. at 842.

To the extent Jarrell's complaint really is that he was not able to cross-examine the preparer of the DataMaster certificate regarding the maintenance and certification process, he simply is restating his *Crawford* objection to the introduction of the certificate under a slightly different guise. *Crawford*, however, states in part, "Where nontestimonial hearsay is at issue, it is wholly consistent with the Framers' design to afford the States flexibility in their development of hearsay law ... as would an approach that exempted such statements from Confrontation Clause scrutiny altogether." *Crawford*, 541 U.S. at 68, 124 S.Ct. at 1374.

Having concluded that the DataMaster certificate is nontestimonial evidence, its introduction is governed by Indiana law. As we observed in *Napier*, such certificates clearly are admissible in Indiana in lieu of live testimony and regardless of

---

no other court has followed *Orpin. See, e.g., Green*, 812 N.Y.S.2d at 785.

**2.** The State failed to respond directly to Jarrell's secondary Sixth Amendment argument and only explicitly addressed the *Crawford* argument. Jarrell, therefore, requests in his

reply brief that we review this issue for prima facie error, or error at first sight, on first appearance, or on the face of it. *See Newman v. State*, 719 N.E.2d 832, 838 (Ind.Ct.App. 1999), *trans. denied*. Even applying this standard of review, we find no reversible error here.

whether the machine certifier is subjected to cross-examination. *See Napier*, 820 N.E.2d at 148 (citing *Platt v. State*, 589 N.E.2d 222 (Ind.1992) and I.C. § 9–30–6–5). Specifically, our supreme court has concluded that our legislature properly "fashioned an inspection and certification scheme to insure the reliability of test results, thereby protecting the rights of the accused, while at the same time streamlining the trial process." *Platt*, 589 N.E.2d at 230 (footnote omitted). There was no Confrontation Clause violation by the introduction of the DataMaster certificate, regardless of whether the issue is framed as a *Crawford* or non-*Crawford* issue.

## II. Sufficiency of the Evidence

■ Jarrell's next argument is that there is insufficient evidence to support his conviction for Class A misdemeanor operating with .15 BAC. In addressing a challenge to the sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of the witnesses. *Wright v. State*, 828 N.E.2d 904, 905–06 (Ind.2005). We affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt. *Id.* at 906. It is the job of the fact-finder to determine whether the evidence in a particular case sufficiently proves each element of an offense, and we consider conflicting evidence most favorably to the fact-finder's determination. *Id.*

Jarrell's specific assertion concerns Indiana Code Section 9–30–6–15(b), which provides:

If, in a prosecution for an offense under IC 9–30–5, evidence establishes that:
(1) a chemical test was performed on a test sample taken from the person charged with the offense within the period of time allowed for testing under section 2 of this chapter; and
(2) the person charged with the offense had an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per:
(A) one hundred (100) milliliters of the person's blood at the time the test sample was taken; or
(B) two hundred ten (210) liters of the person's breath;
the trier of fact shall presume that the person charged with the offense had an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per one hundred (100) milliliters of the person's blood or per two hundred ten (210) liters of the person's breath at the time the person operated the vehicle. However, this presumption is rebuttable.

The time limit referred to in Indiana Code Section 9–30–6–2 is three hours after a police officer has developed probable cause that an individual was driving while intoxicated. There is no dispute here that the breath test conducted by Officer Scott on Jarrell at 10:00 p.m. on July 13, 2004, revealing a BAC of .16, was well within this time limit. Nonetheless, Jarrell contends the State could not rely upon Section 9–30–6–15(b) to establish that he had operated a vehicle with a BAC of .15, but rather that it was required (but failed) to introduce evidence extrapolating the .16 BAC recorded at the time of the test to the time Jarrell was driving.

As Jarrell notes, the predecessor to Section 9–30–6–15(b) [3] was enacted shortly af-

---

**3.** The original enactment reflected the statutory scheme at the time, which criminalized operating with a BAC exceeding .10. There was no separate offense for operating with a higher BAC. Since then, the OWI statutes have been amended to include the Class C misdemeanor offense of operating with a BAC exceeding .08 and the greater Class A misdemeanor offense of operating with a BAC exceeding .15. Section 9–30–6–15(b) was amended to reflect the lowering of the per se

ter this court's decision in *Smith v. State*, 502 N.E.2d 122, 127 (Ind.Ct.App.1986), *trans. denied.* There, we said that the State had failed to prove the defendant had a BAC of .10 at the time he was driving, even though he was tested with a BAC of .12 shortly after his arrest, where "the State presented no evidence relating this figure back to the time of the offense." *Id.* at 127. Arguably, this language was dicta because we were only asked to address the defendant's conviction for operating while intoxicated, not for operating with a specific BAC. *See id.*

Nevertheless, we think it is clear that the predecessor to Section 9–30–6–15(b), which was enacted in 1987, was crafted in direct response to *Smith.* That is, we believe the legislature essentially expressed its disapproval of *Smith* and its implication that the State always had to present independent extrapolation evidence in order to prove a defendant's BAC at the time he or she was driving and could not simply rely on the BAC at the time of a later chemical test. Rather, the statute clearly allows proof of a defendant's BAC at the time of driving to rest on proof of his or her BAC at the time of a test, so long as it was conducted within a defined time period.

Jarrell contends that the statute means that if a defendant is tested within the three-hour time period and the test result exceeds .08 BAC, the only presumption that can attach is that the defendant had a BAC of .08, and no more. That is, in the present case the timely administration of a chemical test on Jarrell, which returned a result of .16 BAC, could only result in a presumption that he had a BAC of .08 at the time he was driving.

We rejected this precise argument in *Rembusch* and held that where a timely chemical test revealed a BAC of .18, the State was entitled to a presumption that the defendant had a BAC of .18 when he was operating his vehicle. *Rembusch*, 836 N.E.2d at 984. We noted that Section 9–30–6–15(b) referred to a timely chemical test with a result of "at least" .08 BAC as allowing a presumption that the defendant had "at least" a .08 BAC at the time he or she was driving. *Id.* The primary rule in statutory construction is to determine and give effect to the intent of the legislature, and the best evidence of legislative intent is the language of the statute itself. *Guy v. State*, 823 N.E.2d 274, 276 (Ind.2005). All words in a statute must be given their plain and ordinary meaning unless otherwise indicated by statute. *Id.*

Here, the parallel use of the phrase "at least" indicates that a timely BAC test result permits a presumption that the defendant had an identical BAC at the time he or she was driving, or in other words that Jarrell's timely test result here of .16 BAC allows for a presumption that he had a .16 BAC when he was driving. Indeed, it arguably would be illogical for the statute to permit an inference that a timely test result of .08 BAC means the defendant had a BAC of .08 when driving, while identically allowing only an inference of .08 BAC while driving even if there was a timely test result of .25 BAC. We also note that Section 9–30–6–15(b) applies to any "offense under IC 9–30–5". That would include both Section 9–30–5–1(a) and 9–30–5–1(b), the Class C misdemeanor operating with .08 BAC and Class A misdemeanor operating with .15 BAC respectively; it does not apply only to the .08 BAC offense. We conclude there is sufficient evidence to support Jarrell's conviction for Class A misdemeanor operating with .15 BAC.

BAC level to .08 but otherwise has not been changed.

## Conclusion

Jarrell's confrontation rights under the Sixth Amendment were not violated by introduction into evidence of the DataMaster compliance certificate, and there is sufficient evidence to support his conviction. We affirm.

Affirmed.

FRIEDLANDER, J., and MATHIAS, J., concur.