Tamara **JOHNSON**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A02–0704–CR–314.

Court of Appeals of Indiana.

Jan. 25, 2008.

---

John L. Tompkins, Brown Tompkins &
Lory, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of
Indiana, Michael Gene Worden, Deputy
Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Tamara Johnson ("Johnson") challenges
her convictions, after a jury trial, for oper-

ating a vehicle while intoxicated, as a class A misdemeanor; and operating a vehicle with an alcohol concentration equivalent to at least .08 grams of alcohol per 210 liters of her breath, as a class C misdemeanor.

We affirm.

## ISSUES

1. Whether the trial court erred when it allowed the State the benefit of the presumption under Indiana Code section 9–30–6–15(b).

2. Whether the trial court improperly admitted the DataMaster certification into evidence.

## FACTS

On February 4, 2006, at approximately 12:26 a.m., Indianapolis Police Department[1] officer John Haggard Jr. was stationed on radar patrol in the 400 block of South Meridian Street in Marion County. Rain showers earlier in the evening had left the roadways wet. Officer Haggard observed a silver Ford sport utility vehicle ("SUV"), headed south in the left-hand lane of the street. The SUV appeared to be traveling in excess of the thirty-mile-per-hour speed limit and was quickly closing in on the vehicle directly in front of it. Officer Haggard activated his hand-held radar. He clocked the SUV at forty miles per hour and observed that it was still accelerating as it passed his location.

Officer Haggard activated his emergency lights and followed the SUV for approximately two blocks. The SUV did not immediately pull over to the roadside shoulder, but instead, closed to within one car length of the car in front of it. Officer Haggard then activated his siren. In response, the SUV veered abruptly to the right side of the road and stopped. As Officer Haggard approached the vehicle, he saw the driver—later identified as Johnson—throw a cigarette to the ground.

When Officer Haggard reached the vehicle, he explained his reasons for stopping Johnson and asked her to produce her driver's license. Johnson "fumbled" with her wallet, and although she "had a hard time pulling it right out," eventually presented her driver's license to Officer Haggard. (Johnson's App. 94). Officer Haggard observed that Johnson's eyes were red and watery. He also smelled the odor of an alcoholic beverage emanating from her person. Officer Haggard asked Johnson whether she had been drinking. Johnson responded that she had consumed "a few" glasses of wine at the Ruth's Chris Steakhouse approximately six blocks away. (Tr. 69). Officer Haggard asked Johnson to exit the vehicle to perform some tests. Johnson complied.

Officer Haggard conducted three standardized field sobriety tests.[2] Johnson

---

1. By the time of trial, Officer Haggard was employed by the Indianapolis Metropolitan Police Department pursuant to the departmental consolidation, which took effect approximately one month before Johnson's trial.

2. The National Highway Traffic Safety Administration (NHTSA) has deemed the horizontal gaze nystagmus, walk-and-turn, and one-leg stand tests to be "the most effective roadside testing to detect impaired drivers." *O'Banion v. State*, 789 N.E.2d 516, 517 (Ind. Ct.App.2003) (quoting *Cooper v. State*, 761 N.E.2d 900, 903 (Ind.Ct.App.2002)).

Horizontal gaze nystagmus is the inability of the eyes to maintain visual fixation as they are turned to the side. In the HGN test the driver is asked to cover one eye and focus the other on an object (usually a pen) held by the officer at the driver's eye level. As the officer moves the object gradually out of the driver's field of vision, toward his ear, he watches the driver's eyeball to detect involuntary jerking. The test is repeated with the other eye. By observing (1) the inability of each eye to track movement smoothly, (2) pronounced nystagmus at maximum deviation, and (3) onset of the

failed the horizontal gaze nystagmus and one-leg stand tests, but passed the nine-step walk and turn test.[3] Officer Haggard determined that he had probable cause to believe that Johnson was driving under the influence of alcohol. Accordingly, he read Indiana's Implied Consent Law[4] to Johnson and asked her whether she would submit to a chemical breath test. Johnson agreed.

Officer Haggard, a certified chemical breath test operator, monitored Johnson for over twenty minutes to ensure that she did not ingest any substance that might interfere with the chemical breath test. Then, at 1:05 a.m., approximately thirty-nine minutes after he stopped her, Officer Haggard administered the chemical breath test to Johnson, using a certified BAC DataMaster instrument. The test elicited a result of .09 grams of alcohol per 210 liters of Johnson's breath.

On February 4, 2006, the State charged Johnson with operating a vehicle while intoxicated in a manner that endangered a person, as a class A misdemeanor; and operating a vehicle with an alcohol concentration equivalent to at least .08 grams of alcohol but less than .15 per 210 liters of her breath, as a class C misdemeanor.

On October 13, 2006, Johnson filed a motion in limine and memorandum wherein she challenged the constitutionality of the statutory presumption created by Indiana Code section 9–30–6–2. Indiana Code section 9–30–6–15 creates a rebuttable presumption that the result of a certified chemical breath test administered to a defendant within three hours of the determination of probable cause to believe that a violation of drunk driving laws has occurred, represents the defendant's blood or breath alcohol concentration at the time he or she operated a motor vehicle.

The trial court conducted Johnson's jury trial on February 1, 2007. At the outset, the trial court heard arguments on Johnson's motion in limine. Most relevantly, Johnson sought to prohibit the State from relying on the presumption contained in Indiana Code section 9–30–6–15(b). In support of her argument, Johnson advanced an article[5] from a scientific journal, discussing a scientific study of the absorption of alcohol. She argued that the study's findings purported to invalidate the statutory presumption. The trial court admitted the journal article as reliable hearsay solely for the purposes of the motion in

nystagmus at an angle less than 45 degrees in relation to the center point, the officer can estimate whether the driver's blood alcohol content (BAC) exceeds the legal limit of .10 percent.
*Cooper*, 761 N.E.2d at 902–03. Next, the walk and turn test involves the officer demonstrating the following and instructing the driver to do the same. The driver must "walk 'with heel to toe' contact on each step, 'hands down to his sides,' for nine steps, then pivot on his left foot, and walk back nine steps." *O'Banion*, 789 N.E.2d at 517. Lastly, the one-leg stand involves the driver "raising one foot about six inches off the ground and counting off thirty seconds in that position." *Id.*

**3.** Because of wet road conditions, the incline of the road, and the fact that Johnson was

wearing high-heeled shoes, Officer Haggard transported Johnson to the sally port of the arrest and processing center (APC), a covered police parking garage, to perform the one-leg stand and nine-step walk and turn tests.

**4.** Indiana Code section 9–30–6–7 provides, in relevant part, "If a person refuses to submit to a chemical test, the arresting officer shall inform the person that refusal will result in the suspension of the person's driving privileges."

**5.** A.W. Jones, A. Norberg, & R.G. Hahn, *Concentration–Time Profiles of Ethanol in Arterial and Venous Blood and End–Exoired Breath During and After Intravenous Infusion*, 42 J. Forensic Sci. 1088 (1997).

limine hearing, but ultimately denied Johnson's motion in limine as to the application of the presumption. Accordingly, the State was permitted to rely upon the presumption at trial.

During the course of Johnson's trial, the State attempted to admit State's Exhibit 2, the certification of the DataMaster instrument used in the investigation. Johnson objected to the admission of the certification if it was being offered as evidence of guilt *per se,* as opposed to being offered as foundation for the Data[M]aster evidence ticket. The trial court overruled Johnson's objection and admitted the certification into evidence, finding that it was self-authenticating and foundational to permit the proper admission of the DataMaster breath test result ticket into evidence.

Next, Johnson moved the trial court, that in the event the certification was going to be shown to the jury, to strike certain language contained therein, to-wit: "The instrument is in good operating condition, satisfying the accuracy requirement set out by State Department of Toxicology Regulations." (Tr. 100–01). She argued that allowing such language characterized the operating condition of the BAC DataMaster in a manner that exceeded the scope of Indiana Code section 9–30–6–5(b). In support, Johnson made the following argument:

> [the Indiana Department of Toxicology Regulations can] adopt regulations for a standard and regulations for the selection and certification of breath test equipment and chemicals. [The statute] doesn't say anything about regulations for good operating condition. That's an extraneous statement that bolsters the machine and that is an out-of-court statement by the certifier that goes beyond saying we certified this on February 2nd.

(Tr. 101). Johnson's objection was overruled. She then objected to the certification being published to the jury. She argued that the certification was foundational in nature and further, was prima facie evidence that the jury should not be allowed to consider. The trial court again overruled Johnson's objection.

Thereafter, the State moved to admit State's exhibit 3, the DataMaster breath test result ticket, into evidence. Johnson objected on previously asserted grounds; however, the trial court admitted the DataMaster breath test result ticket into evidence over her objection. Johnson then moved the trial court give the jury a limiting instruction "as to the proper weight to be given [the DataMaster certification]." Johnson's Br. 12. The trial court denied Johnson's motion. At the close of the evidence, Johnson orally moved for a directed verdict. The trial court denied the motion as to both counts. The jury deliberated and found Johnson guilty as charged. She now appeals.

## DECISION

Johnson argues that the trial court improperly allowed the State the benefit of the presumption created by Indiana Code section 9–30–6–15(b). Specifically, she argues that the statutory presumption relating her test results back to operation of her vehicle is unconstitutional because the State failed to establish a clear and logical nexus between the chemical breath alcohol concentration at the time of the test and breath alcohol concentration at the time of operation of a motor vehicle. Johnson also argues that the trial court improperly admitted the DataMaster certification into evidence.

### 1. *Presumption*

First, we address Johnson's challenge to the constitutionality of Indiana

Code section 9–30–6–15(b). The State notes that Johnson is asserting this issue for the first time on appeal. "Generally, a challenge to the constitutionality of a criminal statute must be raised by a motion to dismiss prior to trial, and the failure to do so waives the issue on appeal." *Rowe v. State,* 867 N.E.2d 262, 267 (Ind.Ct.App. 2007). Johnson failed to file a motion to dismiss on this issue, and therefore, the issue is waived. Waiver notwithstanding, we address Johnson's claim.

At trial, Johnson advanced an article from the Journal of Forensic Sciences that purported to invalidate the presumption contained in Indiana Code section 9–30–6–15(b). According to Johnson, the journal article establishes "two key facts." Johnson's Br. 6.

> One, a person can rise from 0 mg/dl to just over 90 mg/dl of alcohol in 30 minutes, and two a person's ACE should be presumed to be rising during the first 30 minutes after the consumption of alcohol. The rise reflected in this research (90 mg/dl in 30 minutes) equals Johnson's ACE result, meaning a person could get to the level found in Johnson's test in less than the time that passed between Johnson's stop and her test.

*Id.* Johnson argues that the State failed to present evidence demonstrating that "at least 30 minutes had passed between Johnson's last drink and her traffic stop," and therefore, failed to establish a strong logical nexus between Johnson's alcohol concentration equivalent at testing and her presumed alcohol concentration equivalent at the time of operation. Johnson's Br. 7. She cites *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952) for the proposition that before the State can rely upon a presumption, it must prove the facts necessary to establish a strong logical nexus between the proved fact and the presumed fact. Failure to do so, John-

son argues, is in violation of the Constitution of the United States.

Thus, Johnson alleges that because the State did not establish the facts necessary to show a strong logical nexus between her alcohol concentration equivalent at testing and her presumed alcohol concentration equivalent at the time of operation, the trial court erred when it allowed the State to rely on the presumption contained in Indiana Code section 9–30–6–15(b). We disagree.

First, we turn to the language of Indiana Code section 9–30–6–15(b), which states:

> If, in a prosecution for an offense under IC 9–30–5, evidence establishes that:
>
> (1) a chemical test was performed on a test sample taken from the person charged with the offense within the period of time allowed for testing under section 2 of this chapter; and
>
> (2) the person charged with the offense had an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per:
>
> (A) one hundred (100) milliliters of the person's blood at the time the test sample was taken; or
>
> (B) two hundred ten (210) liters of the person's breath;
>
> the trier of fact *shall* presume that the person charged with the offense had an alcohol concentration equivalent to at least eight-hundredths (0.08) gram of alcohol per one hundred (100) milliliters of the person's blood or per two hundred ten (210) liters of the person's breath at the time the person operated the vehicle. However, this presumption is rebuttable.

I.C. § 9–30–6–15(b) (emphasis added). The "period of time allowed for testing under section 2" is three hours. I.C. § 9–30–6–2(c).

The State was entitled to the benefit of the permissive presumption contained in Indiana Code section 9–30–6–15(b). The record indicates that Officer Haggard, a certified chemical breath test operator, stopped Johnson's SUV at approximately 12:26 a.m. and administered a certified breath test at 1:05 a.m.—well within the three-hour statutory period. The test elicited a result of 0.09 gram of alcohol per two hundred and ten liters of Johnson's breath. Therefore, Johnson had an alcohol concentration "equivalent to at least eight-hundredths (0.08) gram of alcohol per one hundred (100) milliliters" of her breath at the time she operated her SUV. Accordingly, the State was entitled to rely upon the statutory presumption relating her test results back to the operation of her SUV.

In her efforts to rebut the aforementioned presumption, Johnson criticized Officer Haggard's handling of the investigation following his stopping of her vehicle. As she explains in her brief,

> The State could easily prove the required facts if officers asked just a few more questions during stops like Johnson's. Here [Officer] Haggard only asked one question regarding Johnson's drinking behavior, two followup [sic] questions would have either established enough facts to show the required strong logical nexus, or established facts that would have barred the presumption. In either case a more reliable determination of the relevant facts would have benefited both sides.

> By limiting his questions to only those favorable to the State[,] Haggard created an unfair bias in his investigation and opened the door to an unjust conviction. In some cases these other facts would not be necessary to create a strong nexus, for instance a person with an ACE of .14 would be hard pressed to attack the strength of the nexus between that result and a .08 ACE 39 minutes prior. However, in cases with facts like Johnson's the State's burden is greater and this Court requiring more facts where there is a close question is not too burdensome and benefits the State by minimizing the risk of obtaining a wrongful conviction.

(Johnson's Br. 7–8). The trial court was not persuaded and allowed the State the benefit of the permissive presumption contained in Indiana Code section 9–30–6–15(b). Perhaps, had Officer Haggard asked additional questions, more of the relevant facts might have been revealed, to the benefit of both parties. That said, however, Johnson's challenge to the presumption fails for the following reasons.

■ First, there exists, under Indiana law, no fundamental right to drive a motor vehicle. *Ruge v. Kovach*, 467 N.E.2d 673, 677 (Ind.1984). "While the United States [Supreme] Court has blurred the distinction between 'right' and 'privilege' with respect to driving, that Court did not define driving as a 'right' but rather referred to it as an 'entitlement.'" *Id.* (citing *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971)). Accordingly, the Indiana General Assembly has a duty to enact legislation to regulate the conduct of drivers on its roadways in order to ensure public safety. Thus, by enjoying the privilege of driving on Indiana's roadways, Johnson consented to be subject to the legislation that governs their use.

Second, the permissive presumption is a legislative creation, and it is within the exclusive prerogative of our legislature to determine its applicability. Accordingly, the legislature determined that when a certified blood or breath test is administered to a suspected drunk driver within three hours of operating a motor vehicle, and the test elicits a result of at least 0.08

gram of alcohol per one hundred milliliters of blood, or per two hundred and ten liters of breath, the trier of fact *shall* presume that the suspected drunk driver had an alcohol concentration equivalent to at least 0.08 at the time he or she operated the motor vehicle. The State met the requirements established by the legislature and thus, was entitled to the presumption contained in Indiana Code section 9–30–6–15(b).

Moreover, given the plain language of Indiana Code section 9–30–6–15(b), any suggestion that the trial court improperly allowed the State the benefit of the presumption is simply an invitation for us to reweigh the facts, which we cannot do. Johnson's challenge seems to be directed toward the perceived unfairness of the presumption as applied to the unique circumstances of her case, where she issued a "low" test result. Johnson's argument appears to be with the legislature. Simply stated, the legislature had the authority to establish criteria for a legal presumption, and the trial court was obligated to follow the law. Johnson has not persuaded us that the trial court erred.

Lastly, we are simply not persuaded by Johnson's argument that the scientific principles espoused in the journal article rebut the permissive presumption. At the crux of Johnson's argument is her contention that the State failed to present evidence demonstrating that "at least 30 minutes had passed between [her] last drink and her traffic stop," and therefore, failed to establish a strong logical nexus between her alcohol concentration equivalent at testing and her presumed alcohol concentration equivalent at the time of operation. Johnson's Br. 7.

However, given the following facts, Johnson has not made a persuasive showing. First, it is undisputed that Johnson consumed several alcoholic beverages at Ruth's Chris Steakhouse before departing. There is no evidence that she consumed alcohol either upon entering or while driving her SUV to the site of Officer Haggard's stop. It is also undisputed that, at approximately 12:26 a.m., Johnson was stopped nearly six blocks from the Ruth's Chris Steakhouse. Common sense would reasonably dictate that not less than five to ten minutes elapsed between the time Johnson left Ruth's Chris Steakhouse, got into her vehicle and drove approximately six or seven blocks to the location where she was stopped by Officer Haggard. Further, it is undisputed that Officer Haggard then transported Johnson to a safe location to perform the standardized field sobriety tests and, ultimately, the breath test at 1:05 a.m., thirty-nine minutes after he stopped Johnson's SUV.

Reasonably, an excess of forty-five minutes elapsed between the time Johnson consumed her last alcoholic beverage and her undertaking the chemical breath test. We are not convinced that Johnson has rebutted the permissive presumption as provided in the statute. As a result, we cannot find that the trial court abused its discretion by permitting the State to rely upon the presumption contained in Indiana Code section 9–30–6–15(b).

## 2. *DataMaster Certification*

 Johnson also argues that it was error to admit into evidence and publish to the jury the certificate of compliance issued by the Indiana Department of Toxicology for the DataMaster, as proof of guilt. Specifically, she argues that the State "exceed[ed] the foundational limits allowed under [Indiana Code § ] 9–30–6–5(b), [and] converted the Certificate ... to a testimonial document," raising confrontation issues under the Sixth Amendment. Johnson's Br. 11.

■■■ We initially observe that the admission of evidence is a determination entrusted to the discretion of the trial court. *Rembusch v. State,* 836 N.E.2d 979, 982 (Ind.Ct.App.2005). We will reverse a trial court's decision only for an abuse of discretion, which occurs when the court's action is clearly against the logic and effect of the facts and circumstances before it. *Id.*

Indiana Code section 9–30–6–5 provides,

(a) The director of the department of toxicology of the Indiana University school of medicine shall adopt rules under IC 4–22–2 concerning the following:

(1) Standards and regulations for the:

(A) selection;

(B) training; and

(C) certification;

of breath test operators.

(2) Standards and regulations for the:

(A) selection; and

(B) certification;

of breath test equipment and chemicals.

(3) The certification of the proper technique for administering a breath test.

(b) Certificates issued in accordance with rules adopted under subsection (a) shall be sent to the clerk of the circuit court in each county where the breath test operator, equipment, or chemicals are used to administer breath tests. However, failure to send a certificate does not invalidate any test.

(c) Certified copies of certificates issued in accordance with rules adopted under subsection (a):

(1) are admissible in a proceeding under this chapter, IC 9–30–5, IC 9–30–9, or 9–30–15;

(2) constitute prima facie evidence that the equipment or chemical:

(A) was inspected and approved by the department of toxicology on the date specified on the certificate copy; and

(B) was in proper working condition on the date the breath test was administered if the date of approval is not more than one hundred eighty (180) days before the date of the breath test;

(3) constitute prima facie evidence of the approved technique for administering a breath test; and

(4) constitute prima facie evidence that the breath test operator was certified by the department of toxicology on the date specified on the certificate.

(d) Results of chemical tests that involve an analysis of a person's breath are not admissible in a proceeding under this chapter, IC 9–30–5, IC 9–30–9, or IC 9–30–15 if:

(1) the test operator;

(2) the test equipment;

(3) the chemicals used in the test, if any; or

(4) the techniques used in the test;

have not been approved in accordance with the rules adopted under subsection (a).

I.C. § 9–30–6–5.

In support of her contentions, Johnson cites *Napier v. State,* 820 N.E.2d 144 (Ind. Ct.App.2005) (*Napier I* ), *modified on rehearing,* 827 N.E.2d 565 (Ind.Ct.App.2005) (*Napier II* ), and *Jarrell v. State,* 852 N.E.2d 1022 (Ind.Ct.App.2006). The State counters that Johnson's reliance on these cases is misplaced because these cases "simply held that admission of a DataMaster certification did not violate the hearsay rule and did not implicate a defendant's

Sixth Amendment rights of confrontation and cross-examination." State's Br. 8–9. We find the State's arguments persuasive.

■ In *Napier I,* a panel of this court specifically addressed the applicability of the rule set forth in *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), as it relates to "the State's method of establishing a proper evidentiary foundation regarding the admissibility of various documents that are used to prove the results of a criminal defendant's breath test." *Napier I,* 820 N.E.2d at 145. *Crawford* stands for the proposition that when the State seeks to introduce a testimonial out-of-court statement into evidence against a criminal defendant, the Confrontation Clause requires the State to demonstrate the following: (1) that the witness who made the statement is unavailable; and (2) that the defendant had a prior opportunity to cross-examine the witness. *Crawford,* 124 S.Ct. at 1374.

In appealing his conviction for class C misdemeanor operating a vehicle with a BAC of .08 or more, Napier challenged the trial court's admission of breath test results by certification documents and a BAC DataMaster evidence ticket on Sixth Amendment grounds. We found that the admission of the breath test certification documents did not violate *Crawford* and noted that our legislature had expressly deemed certificates regarding the inspection and compliance with relevant regulations of breath test instruments to be admissible in prosecutions for the offense of operating a vehicle with a BAC of .08 or more.

> [F]or a number of years, our statutes have permitted the State to introduce hearsay documents at trial in order to establish an evidentiary foundation regarding the inspection and compliance with relevant regulations of breath test instruments. To be sure, Indiana Code

section 9–30–6–5 permits the introduction of certificates of the director of the Department of Toxicology regarding the inspection and compliance issues.

*Napier I,* 820 N.E.2d at 147.

In *Napier I,* the State introduced into evidence the DataMaster certification, which stated that the machine had undergone testing and was inspected on a specified date and was "in good operating condition satisfying the accuracy requirements set out by the State Department of Toxicology Regulations." *Id.* at 149. We ultimately found

> that the evidentiary foundation is satisfied for the admissibility of the breath test evidence ticket, the certificate of inspection and compliance. Moreover, the certificate of inspection and compliance is proffered, admitted, and treated as prima facie evidence not only as to what it states regarding inspection and compliance, but as to the inference to be given to it by the trial court that the machine was in working order at the time of the breath test.

*Id.* at 149. We found no basis upon which the admission of the certificates would preclude any meaningful cross-examination of the breath test evidence presented against Napier, because "the information contained in the certificates does not pertain to the issue of guilt. Rather, that information simply goes to inspection and certification matters." *Id.* Thus, we concluded that the procedures permitted by our supreme court and our legislature "for establishing a foundation for the admission of the certifications regarding the breath test machine and the regulations of the Toxicology Department do not run afoul of the rule ... in *Crawford* and the Confrontation Clause." *Id.* at 150. On rehearing, the same panel explained that such

> certificates are not prepared at a judicial proceeding or during police interro-

659

gation. Moreover, they are not sworn affidavits and do not contain formalized testimonial materials. And breath test machine operators are not certified for purposes that relate to any particular case, ... [they] serve an administrative function and are prepared in a routine manner rather than for the purpose of an individual case.

*Napier II,* 827 N.E.2d at 569. Thus, because breath test machine certifications bore "no similarity to the type of evidence that the Supreme Court labeled as testimonial," the panel found no *Crawford* violations. *Id.*

Likewise, in *Jarrell,* the defendant argued that breath test machine certifications were testimonial in nature and violated his Sixth Amendment rights as set out in *Crawford.* We cited our holdings in *Napier I* and *II,* and acknowledged the following facts: (1) "breath test machine certificates might be said to have been prepared 'in anticipation of litigation' in one sense, in that it is clear that such certificates may be used in future drunk driving prosecutions"; and (2) "certification of a breath test machine is a foundational requirement for the introduction of a result from that machine into evidence." *Jarrell,* 852 N.E.2d at 1026. However, as we further clarified,

[C]ertification of breath-test machines is removed from the direct investigation or direct proof of whether any particular defendant has operated a vehicle while intoxicated; the certificates are not pre-

pared in anticipation of litigation in any particular case or with respect to implicating any specific defendant. The periodic certification of breath test machines—every 180 days—is mandated by the Indiana Code and accompanying regulations, regardless of whether the machine is ever actually used in an OWI investigation.

*Id.* (internal citations omitted). Thus, we reiterated our holdings in *Napier I* and *Napier II,* and found that breath test machine certifications are not testimonial in nature. *Id.*

As was the case in *Napier I* and *II* and *Jarrell,* the issue here is the admissibility of a breath test machine certification. Johnson contends that the trial court improperly permitted the State to "convert[ ]" the breath test machine certification into a testimonial document, raising confrontation issues under the Sixth Amendment. Johnson's Br. 11. Johnson also argues that through the use of "bolster[ing language]" in the certification, (Tr. 106), regarding the good operating condition of the BAC DataMaster instrument, the State exceeded "the foundational allowance for [the certification] and improperly argued [that] the Certificate was evidence of guilt [*per se* ]." [6] Johnson's Br. 11. We disagree.

Indiana Code section 9–30–6–5(c)(1) expressly states that

[c]ertified copies of certificates issued in accordance with rules adopted under subsection (a):

---

**6.** Johnson also argued that the State exceeded the foundational limits allowed under Indiana Code section 9–30–6–5(b) when it stated in its closing arguments to the jury that "Officer Haggard did everything he could to get ... the best test that he could and that is a valid sample that came out of a perfectly well-working machine." (Tr. 223). We disagree, noting that the trial court preliminarily instructed the jury that counsel would make

final arguments and that "[t]hese final arguments are not evidence. The attorneys are permitted to characterize the evidence, discuss the law, and attempt to persuade you to a particular verdict. You may accept or reject those arguments as you see fit." (Tr. 52). Based upon the foregoing, we find no error from the State's reference to the reliability of the sample or the efficacy of the BAC Data-Master.

(1) are admissible in a proceeding under this chapter, IC 9–30–5, IC 9–30–9, or IC 9–30–15.

Moreover, we have already held in *Napier I* that "the procedures permitted by our supreme court and our legislature for establishing a foundation for the admission of the certifications regarding the breath test machine and the regulations of the Toxicology Department do not run afoul of the rule … in *Crawford* and the Confrontation Clause." *Napier I,* 820 N.E.2d at 150.

 Lastly, we reject Johnson's contention that the trial court permitted the State to admit the certification with bolstering language as evidence of guilt *per se.* Johnson appears to find fault with the certification's language stating, "the instrument is in good operating condition, satisfying accuracy requirements set out by State Department of Toxicology Regulations." (State's Ex. 2). We reject this argument. Indiana Code section 9–30–6–5(c) states that BAC DataMaster certifications issued in accordance with rules adopted under subsection (a)—which authorizes the director of the Department of Toxicology to adopt standards as to the *certification* of breath test equipment—are admissible in drunk driving prosecutions. Thus, we find no merit in Johnson's claim that the statement in the certification indicating that the BAC DataMaster is in good working order somehow exceeds the scope of Indiana Code section 9–30–6–5.

Notably, comparable language appeared on the certification admitted into evidence in *Napier* I, again, merely certifying that the BAC DataMaster was appropriate for the purpose for which it was used. The Merriam–Webster Dictionary defines the word "certify" as meaning "to confirm or attest often by a document … as being true, meeting a standard or being as represented," and also, "to designate as hav-

ing met the requirements for pursuing a certain kind of study or work." Merriam Webster's International Dictionary 367 (3rd ed.1976). Our reading of the record supports the State's contention that "[e]vidence from the certification that the machine was in good operating condition, merely satisfied the foundational requirements for admission of the test results, in the absence of any defense evidence that the machine was not in good working order at the time of [Johnson]'s test." State's Br. 9.

Based upon the foregoing, and the fact that our state legislature has neither invalidated Indiana Code section 9–30–6–5(c)(1) nor qualified its application, we reject Johnson's contention that the trial court erred by admitting the certificate and somehow permitted the State to convert it into a testimonial document, raising confrontation and cross-examination issues. We find no *Crawford* violation or abuse of discretion.

Affirmed.

MAY, J., and CRONE, J., concur.