**Lestes NIVENS, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 57A04–0411–CR–632.

Court of Appeals of Indiana.

Aug. 22, 2005.

Rehearing Denied Nov. 2, 2005.

Patrick J. Arata, Arata Law Firm, Fort Wayne, for Appellant.

Steve Carter, Attorney General of Indiana, Ryan D. Johanningsmeier, Deputy Attorney General, Indianapolis, for Appellee.

**OPINION**

ROBB, Judge.

Lestes Nivens appeals the trial court's order denying his motion to suppress the

results of his chemical breath test. We affirm.

## Issue

Nivens raises one issue for our review, which we restate as whether the trial court properly denied Nivens' motion to suppress the results of his chemical breath test.

## Facts and Procedural History

Shortly before midnight on December 30, 2003, Sergeant Arthur Willet of the Noble County Sheriff's Department conducted a traffic stop on a vehicle driven by Nivens. Sergeant Willet believed that Nivens was intoxicated, and requested that Nivens submit to a chemical breath test. Nivens agreed to take the test, and the test was administered using a BAC Datamaster machine with the serial number 881182. The chemical breath test showed that Nivens' blood-alcohol level was 0.10. Nivens was arrested and later charged with operating a vehicle while intoxicated as a Class C misdemeanor.

Before trial, Nivens filed a motion to suppress the results of his chemical breath test. Nivens argued that the results of his test were inadmissible because the BAC Datamaster machine used in the test was not properly inspected and certified by the Indiana State Department of Toxicology ("ISDT"). The trial court held a hearing on Nivens' motion on September 1, 2004. During the hearing, Nivens introduced into evidence the inspection certificate issued by ISDT for the BAC Datamaster machine with the serial number 881182. The inspection certificate indicated that the Datamaster machine used to test Nivens had been inspected on December 2, 2003. Included with the inspection certificate were the results of four simulated tests that were conducted to determine whether the Datamaster machine was in good operating condition. The first two tests were exposed to 0.08 ethanol water

solutions. The first test reported a result of 0.07, while the result of the second test was reported as 0.0772. The third test was exposed to a 0.15 ethanol water solution, and the result reported was 0.1434. After being exposed to a 0.08 ethanol water solution, the result reported for the fourth test was 0.07. The inspection certificate concluded that the BAC Datamaster machine used in Nivens' chemical breath test was "in good operating condition, satisfying the accuracy requirements set out by State Department of Toxicology Regulations." Appendix to Brief of Appellant at 70.

Nivens also introduced the testimony of Dr. Michael Evans. Dr. Evans testified that he is a toxicologist and was the director of ISDT from 1987 through 1989. He indicated that he was familiar with the BAC Datamaster machine and with the standards for certification of this instrument, which are listed in Title 260, section 1.1–2–1 of the Indiana Administrative Code. Dr. Evans stated that the two test results that were reported as 0.07 were not in compliance with the rules adopted by ISDT in the Indiana Administrative Code because they were not expressed to the third decimal place. Because of this, Dr. Evans concluded that the Datamaster machine used to test Nivens was not properly inspected and certified by ISDT.

After the hearing, the trial court issued an order denying Nivens' motion to suppress. On November 4, 2004, Nivens filed a motion requesting that the trial court certify this matter for an interlocutory appeal. The trial court granted Nivens' motion, and we accepted jurisdiction of this appeal on December 30, 2004.

## Discussion and Decision

■ Nivens argues that the trial court erred when it denied his motion to suppress the results of his chemical breath

test. He contends that, pursuant to Indiana Code section 9–30–6–5(d), the results of his chemical breath test are inadmissible because ISDT failed to certify the Datamaster machine in accordance with its own regulations. We disagree.

■ "The admission of chemical breath test results is left to the sound discretion of the trial court and will be reviewed for an abuse of discretion." *Fields v. State*, 807 N.E.2d 106, 109 (Ind.Ct.App.2004), *trans. denied.* An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Smith v. State*, 751 N.E.2d 280, 281 (Ind. Ct.App.2001), *trans. denied.*

The standards and regulations used for the certification of chemical breath test equipment are set by ISDT. Ind.Code § 9–30–6–5(a)(2). Certificates issued by ISDT that indicate that breath test equipment is in good operating condition are admissible and constitute prima facie evidence that the equipment was (1) inspected and approved by ISDT, and (2) was in proper working condition on the date the breath test was administered if the date of approval was not more than one hundred and eighty days before the date of the breath test. Ind.Code § 9–30–6–5(c). Indiana Code section 9–30–6–5(d) provides that the results of chemical breath tests are not admissible if the test equipment has not been approved in accordance with the rules adopted by the Department of Toxicology. *See also Fields*, 807 N.E.2d at 111.

Nivens' arguments principally focus upon the standards adopted by the ISDT for the inspection and certification of chemical breath test equipment, like the BAC Datamaster machine. Title 260, section 1.1–2–1 of the Indiana Administrative Code provides the following standards for chemical breath test equipment:

(a) All breath test equipment approved by the director of the state department of toxicology of Indiana University School of Medicine shall be inspected at least once each one hundred eighty (180) days at their usual location (building). If such location (building) is changed, the equipment must be reinspected before it can be certified for use.

(b) Such inspection shall include verification that the equipment is in good operating condition and satisfies the accuracy requirements set out in subsection (e)(2).

(c) Only persons authorized by the director of the state department of toxicology of Indiana University School of Medicine shall inspect approved breath test equipment.

(d) All such authorized inspectors shall report their findings to the director.

(e) Breath test equipment shall meet the following standards:

(1) Tests shall be made using known ethanol-water or ethanol-gas solutions, approved by the director of the state department of toxicology of Indiana University School of Medicine, to simulate an ethanol-breath solution.

(2) Such test results shall not deviate more than minus eight percent (–8%) from the known alcohol content of the ethanol-water or ethanol-gas solution, for example, 0.10% w/v solution of ethanol in water shall test within the range of 0.092% to 0.100%. No test result for the purpose of certification shall exceed the known ethanol content of the test solution.

(3) *For the purpose of inspecting the breath test equipment, the analytical result shall be expressed to the third decimal place.*

(f) Chemicals (if required) shall be of sufficient strength and quality to allow

the breath test device to operate in the manner specified in subsection (e)(2). (Emphasis added.) [1]

Nivens argues that ISDT failed to properly certify the BAC Datamaster machine that was used to test him in accordance with the standards established in Title 260, section 1.1–2–1(e) of the Indiana Administrative Code. He contends that section 1.1–2–1(e)(3) requires that the results of each of the tests done to assess the accuracy of the machine must be expressed to the third decimal place. He points out that two of the tests that were done were only expressed to the second decimal place. Because the results of each of the tests that were done were not expressed to the third decimal place, Nivens concludes that the BAC Datamaster machine was not properly certified, and, therefore, the results of his chemical breath test are inadmissible under Indiana Code section 9–30–6–5(d).

ISDT's interpretation of section 1.1–2–1, as demonstrated by its certification of the BAC Datamaster machine, is at odds with Nivens' interpretation. On December 2, 2003, four tests were done to assess the accuracy of the BAC Datamaster machine that was used to test Nivens. The results of two of the tests were expressed to the fourth decimal place, while the results of the other two tests were only expressed to the second decimal place. Despite this, ISDT concluded that the BAC Datamaster machine was "in good operating condition, satisfying the accuracy requirements set out by State Department of Toxicology Regulations." App. to Br. of Appellant at 70. In ISDT's view, a BAC Datamaster machine can be properly certified even though some of the results of the tests that were done to assess the accuracy of the machine are not expressed to the third decimal place.

In considering Nivens' arguments, we must construe an administrative rule. "When we construe an administrative rule, we use the same principles employed to construe statutes." *Indiana–Kentucky Electric Corp. v. Comm'r, Indiana Dep't of Envtl. Mgmt.*, 820 N.E.2d 771, 777 (Ind.Ct. App.2005). "The primary rule in statutory construction is to determine and give effect to the intent of the legislature. The best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless otherwise indicated by statute." *Guy v. State*, 823 N.E.2d 274, 276 (Ind.2005) (citation omitted). When a statute is subject to different interpretations, we give great weight to the interpretation of the statute offered by the administrative agency charged with the duty of enforcing the statute. *Shaffer v. State*, 795 N.E.2d 1072, 1076 (Ind.Ct.App.2003). "When a court determines that an administrative agency's interpretation is reasonable, it should 'terminate[ ] its analysis' and not address the reasonableness of the other party's interpretation." *Id.* (quoting *Indiana Wholesale Wine & Liquor Co. v. State ex rel. Indiana Alcoholic Beverage Comm'n*, 695 N.E.2d 99, 105 (Ind.1998)).

■ Here, ISDT's interpretation of Title 260, section 1.1–2–1, based on the language of that regulation, is reasonable. We first note that section (e)(1) uses the word "[t]ests" while section (e)(2) uses the word "results." The use of these words in their plural form suggests that when testing the accuracy of a chemical breath test machine, ISDT must perform more than one test. Section (e)(3), though, states, "the analytical *result* shall be expressed to

**1.** Title 260, section 1.1–2–2(a) of the Indiana Administrative Code also specifies that "[a]ll breath test equipment shall be certified as to compliance with standards specified in section 1(e) and 1(f) of this rule at least once each one hundred and eighty (180) days."

the third decimal place." (emphasis added). The use of the word "result" in its singular form suggests that in order for a chemical breath test machine to be certified, only one test, which would produce only one result, need be performed and only that result must be expressed to the third decimal place. It is also significant that nothing in section 1.1–2–1 specifies the exact number of tests that must be done to determine the accuracy of a chemical breath test machine before that machine can be certified. Based upon this, we believe that in order for a chemical breath test machine to be properly certified according to the standards established in section 1.1–2–1, ISDT must perform, at least, two tests to verify the accuracy of the machine. These tests must (1) be made using known ethanol-water or ethanol-gas solutions; (2) produce results that do not deviate more than minus eight percent from the known alcohol content of the ethanol-water or ethanol-gas solution; and (3) express the analytical result of the test to the third decimal place. If ISDT were to perform two tests that satisfied each of these standards, then, according to Title 260, section 1.1–2–1, the chemical breath test machine could be properly certified. Any further tests conducted by ISDT, beyond these two required tests, are merely further assurance of the machine's accuracy and are not required by Title 260, section 1.1–2–1. Since further testing is not required, the results of these tests need not be expressed to the third decimal place. Thus, Title 260, section 1.1–2–1(e)(3) does not require that the results of multiple tests done to assess the accuracy of the Datamaster machine each be expressed to the third decimal place.

Here, the trial court did not err in denying Nivens' motion to suppress because ISDT properly certified the BAC Datamaster machine that was used to test Nivens in accordance with the regulations established in Title 260, section 1.1–2–1. ISDT's inspection report indicated that it performed four tests to assess the accuracy of the BAC Datamaster machine. Each of these tests used a known ethanol water solution. The results of two of these tests were expressed to the fourth decimal place and did not deviate more than minus eight percent from the known alcohol content of the ethanol water solution. The two tests conducted by ISDT that had results reported to the fourth decimal place satisfied the requirements of Title 260, section 1.1–2–1(e) of the Indiana Administrative Code, and, thus, ISDT correctly certified the BAC Datamaster machine.[2]

The fact that the results of two of the tests performed by ISDT were only expressed to the second decimal place does not indicate that ISDT failed to certify the BAC Datamaster machine in accordance with Title 260, section 1.1–2–1 because that regulation did not require that these tests be performed. ISDT had already performed two tests that satisfied the standards set out in section 1.1–2–1, so the additional tests performed were unnecessary. Since these two additional tests were not required, their results did not need to be expressed to the third decimal place.

Furthermore, we fail to see how ISDT's performance of two additional tests whose results were only expressed to the second decimal place harmed Nivens. These tests provided additional data from which ISDT

**2.** Although the results of two of the tests performed by ISDT were expressed to the fourth decimal place, we read section 1.1–2–1(e)(3) to require that the result of the test must be expressed to at least the third decimal place. If the result is expressed beyond the third decimal place, as in this case, that would also satisfy the standard set out in Title 260, section 1.1–2–1.

could assess the accuracy of the Datamaster machine. Certainly, greater efforts by ISDT to ascertain the accuracy of the machine are not objectionable. The machine's reporting of results to only the second decimal place did not harm Nivens. When the Datamaster machine moves from reporting results expressed to the third decimal place to reporting results expressed to the second decimal place, the machine drops the number in the third decimal place and does not round up. This could only be a benefit to Nivens.

Therefore, the trial court properly denied Nivens' motion to suppress the results of his chemical breath test because ISDT inspected and certified the BAC Datamaster machine that was used to test Nivens in accordance with the regulations set out in Title 260, section 1.1–2–1 of the Indiana Administrative Code.

*Conclusion*

The trial court properly denied Nivens' motion to suppress the results of his chemical breath test because ISDT inspected and certified the BAC Datamaster machine in accordance with the regulations established in Title 260, section 1.1–2–1 of the Indiana Administrative Code. The trial court's order denying Nivens' motion to suppress is therefore affirmed.

Affirmed.

FRIEDLANDER, J., and BAILEY, J., concur.