Francisco J. RAMIREZ, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 65A01–0911–CR–543.

Court of Appeals of Indiana.

May 28, 2010.

William W. Gooden, Mt. Vernon, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Indianapolis, IN, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Francisco J. Ramirez appeals his conviction for Class A misdemeanor operating a vehicle while intoxicated. Ramirez was arrested for drunk driving and failed a chemical breath test. At trial, the State introduced Ramirez's breath test results as well as a certificate of compliance verifying routine inspection of the breath test equipment. The official who had inspected the equipment and prepared the inspection certificate did not testify. Ramirez argues that the admission of the State's evidence violated his Sixth Amendment right to confrontation because he was unable to cross-examine the equipment certifier. We hold that the introduction of the State's exhibits did not offend Ramirez's confrontation rights, as the inspection certificate was not testimonial evidence within the purview of *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and *Melendez–Diaz v. Massachusetts,* —— U.S. ——, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). We affirm the judgment of the trial court.

### Facts and Procedural History

On October 18, 2008, Officer Brennan Reese of the Mount Vernon Police Department was on patrol in his cruiser when he saw a gray Ford Mustang pass by. The Mustang appeared to be speeding. Officer Reese began to follow it and activated his radar. The Mustang was travelling at thirty-eight miles per hour in a thirty mile per hour zone. Officer Reese also saw the vehicle weave back and forth within its lane, cross the fog line, and nearly hit a curb.

Officer Reese initiated a traffic stop and approached the car. Ramirez was behind the wheel. Officer Reese asked Ramirez to produce his driver's license. He observed Ramirez exhibit poor manual dexterity while retrieving it. Officer Reese also noticed a strong odor of alcohol and that Ramirez's eyes were bloodshot. Officer Reese had Ramirez step out of the vehicle and perform three field sobriety tests. Ramirez failed them all. Officer Reese then asked Ramirez to take a chemical breath test. Ramirez agreed.

Officer Reese brought Ramirez to jail where he administered the breath test using a BAC DataMaster. The DataMaster measures the concentration of alcohol in a suspect's breath. A subject blows into the machine, and the DataMaster prints an evidence ticket displaying the subject's blood-alcohol content (BAC). Ramirez's test printout showed that he had a BAC of .09.

The State charged Ramirez with Class A misdemeanor operating a vehicle while intoxicated endangering a person, Ind.Code § 9–30–5–2(a), and Class C misdemeanor operating a vehicle while intoxicated with an alcohol concentration equivalent to .08 or more, *id.* § 9–30–5–1(a).

At trial, the State offered both Ramirez's breath test results as well as an official certificate of compliance verifying routine inspection of Officer Reese's DataMaster. The certificate was issued by the Indiana State Department of Toxicology. It recited that the DataMaster in question had been examined on August 12, 2008, that the instrument was in good operating condition, and that it satisfied the accuracy requirements established by the Department of Toxicology Regulations. The document was signed by a director at the Department of Toxicology. The certificate further read, "This Letter of Certification, issued by the State Department of Toxicology, must be kept on file in the office of the Clerk of the Circuit Court and may be duplicated as needed for use in Court." Appellant's App. p. 98. Officer Reese appeared at trial to testify for the State and authenticate Ramirez's breath test results, but the official who had examined the DataMaster and completed the inspection certificate was not present.

Ramirez objected to the admission of the inspection certificate and the test results. He argued that he was unable to cross-examine the person who prepared the certificate, so introduction of the document violated his Sixth Amendment confrontation rights. He further argued that since the certificate was a foundational requirement for the breath test results, his inability to cross-examine the certifier precluded admission of the DataMaster printout. The trial court overruled Ramirez's objections and admitted both exhibits.

The jury found Ramirez guilty of both charges. The trial court merged the convictions and entered judgment on the Class A misdemeanor. Ramirez now appeals.

### Discussion and Decision

Ramirez argues that the DataMaster inspection certificate and breath test results were admitted in violation of his Sixth Amendment right to confrontation.

The results of a chemical breath test are inadmissible in a prosecution for operating while intoxicated unless the test operator, test equipment, chemicals used in the test, and test techniques have been approved in accordance with the rules promulgated by the Indiana University School of Medicine Department of Pharmacology and Toxicology. Ind.Code § 9–30–6–5(d); *Fields v. State*, 807 N.E.2d 106, 109 (Ind. Ct.App.2004), *clarified on reh'g*, 811 N.E.2d 978 (Ind.Ct.App.2004), *trans. denied*. Accordingly, for the results of a chemical breath test to be admissible, three foundational requirements must be satisfied: (1) the person who administered the test must be certified by the Department of Toxicology, (2) the equipment used in the test must have been inspected and approved by the Department of Toxicology, and (3) the operator must have followed the procedures approved by the Department of Toxicology. *State v. Lloyd*, 800 N.E.2d 196, 199 (Ind.Ct.App.2003). Certificates issued by the Department of Toxicology indicating that breath test equipment is in good operating condition are admissible at trial and constitute prima facie evidence that the equipment (1) was inspected and approved by the Department of Toxicology and (2) was in proper working condition on the date the breath test was administered if the date of approval was not more than 180 days before the date of the test. I.C. § 9–30–6–5(c); *Nivens v. State*, 832 N.E.2d 1134, 1136 (Ind.Ct.App.2005), *reh'g denied*. The Indiana Code also mandates that certificates issued in accordance with the Department of Toxicology rules "shall be sent to the clerk of the circuit court in each county where the breath test operator, equipment, or chemicals are used to ad-

minister breath tests." I.C. § 9–30–6–5(b).

■ Meanwhile the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." The right to confrontation guaranteed by the Sixth Amendment is made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

■ In *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held that the Confrontation Clause bars admission of out-of-court, testimonial statements in criminal trials unless the declarant is unavailable to testify and the defendant had a prior opportunity for cross-examination. *Id.* at 68, 124 S.Ct. 1354; *see also Davis v. Washington,* 547 U.S. 813, 821–22, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Crawford,* 541 U.S. at 68–69, 124 S.Ct. 1354. A critical aspect of the *Crawford* holding is its application only to "testimonial" statements. *Davis,* 547 U.S. at 821, 126 S.Ct. 2266. "It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Id.* The *Crawford* majority declined to provide a comprehensive definition of "testimonial," 541 U.S. at 69, 124 S.Ct. 1354, but it identified "various formulations" of the "core class of 'testimonial' statements":

(1) ex parte in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially;

(2) extrajudicial statements ... contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions;

(3) statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Pendergrass v. State,* 913 N.E.2d 703, 706 (Ind.2009) (quoting *Crawford,* 541 U.S. at 51–52, 124 S.Ct. 1354), *cert. pending; see also Davis,* 547 U.S. at 822, 126 S.Ct. 2266 (holding that statements made in response to police interrogation are testimonial "when the circumstances objectively indicate that there is no ... ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution").

Following *Crawford,* this Court on several occasions addressed whether breath test inspection certificates are testimonial documents implicating the Sixth Amendment right to confrontation, and we routinely concluded that the certificates are nontestimonial. *See Johnson v. State,* 879 N.E.2d 649, 660 (Ind.Ct.App.2008); *Jarrell v. State,* 852 N.E.2d 1022, 1026 (Ind.Ct.App.2006); *Rembusch v. State,* 836 N.E.2d 979, 982 (Ind.Ct.App.2005), *reh'g denied, trans. denied; Napier v. State,* 820 N.E.2d 144, 150 (Ind.Ct.App.2005), *modified in part on reh'g,* 827 N.E.2d 565 (Ind.Ct.App. 2005), *trans. denied, cert. denied,* 546 U.S. 1215, 126 S.Ct. 1437, 164 L.Ed.2d 134 (2006). We reasoned in part that (1) the certificates are not prepared at a judicial proceeding or during police interrogation,

*Rembusch,* 836 N.E.2d at 982, (2) the certificates are not sworn affidavits and do not contain formalized testimonial materials, *id.,* and (3) although inspection certificates are prepared for purposes of criminal litigation, "certification of breath-test machines is removed from the direct investigation or direct proof of whether any particular defendant has operated a vehicle while intoxicated; the certificates are not prepared in anticipation of litigation in any particular case or with respect to implicating any specific defendant." *Jarrell,* 852 N.E.2d at 1026 (citations omitted). Our holdings were substantially in accord with the decisions of other jurisdictions. *See Abyo v. State,* 166 P.3d 55, 60 (Alaska Ct.App.2007); *Bohsancurt v. Eisenberg,* 212 Ariz. 182, 129 P.3d 471, 480 (Ariz.Ct. App.2006); *Pierce v. State,* 278 Ga.App. 162, 628 S.E.2d 235, 238 (2006); *State v. Marshall,* 114 Hawai'i 396, 163 P.3d 199, 205 (Haw.Ct.App.2007); *People v. Kim,* 368 Ill.App.3d 717, 307 Ill.Dec. 92, 859 N.E.2d 92, 94–95 (2006); *State v. Dukes,* 38 Kan.App.2d 958, 174 P.3d 914, 917 (2008); *Commonwealth v. Walther,* 189 S.W.3d 570, 575 (Ky.2006); *State v. Carter,* 326 Mont. 427, 114 P.3d 1001, 1007 (2005); *State v. Fischer,* 272 Neb. 963, 726 N.W.2d 176, 182–83 (2007); *State v. Sweet,* 195 N.J. 357, 949 A.2d 809, 819 (2008); *Green v. DeMarco,* 11 Misc.3d 451, 812 N.Y.S.2d 772, 785 (N.Y.Sup.Ct.2005); *State v. Norman,* 203 Or.App. 1, 125 P.3d 15, 18–19 (2005); *Salt Lake City v. George,* 189 P.3d 1284, 1289 (Utah Ct.App.2008). *But see Shiver v. State,* 900 So.2d 615, 618 (Fla. Dist.Ct.App.2005) (contrary view); *People v. Orpin,* 8 Misc.3d 768, 796 N.Y.S.2d 512, 516 (N.Y.Just.Ct.2005).

The Supreme Court recently revisited *Crawford* and elaborated on the meaning of "testimonial" within the realm of forensic chemical testing. *See Melendez–Diaz v. Massachusetts,* —— U.S. ——, ——, 129 S.Ct. 2527, 2532, 174 L.Ed.2d 314 (2009).

In *Melendez–Diaz,* law enforcement seized from the defendant a white substance resembling cocaine. *Id.* at 2530. The State introduced three "certificates of analysis" at trial indicating that the seized substance was cocaine of a certain weight. *Id.* at 2531. The certificates were sworn to by state laboratory analysts before a notary public. *Id.* The trial court admitted the certificates into evidence without the analysts' live testimony. *Id.* A divided Supreme Court held that the admission of the lab certificates violated the defendant's confrontation rights. *Id.* at 2532. The Court held that the certificates were "quite plainly affidavits: 'declaration[s] of facts written down and sworn to by the declarant before an officer authorized to administer oaths.'" *Id.* (quoting *Black's Law Dictionary* 62 (8th ed. 2004)). The certificates were admitted to prove that the substance found in the defendant's possession was cocaine—"the precise testimony the analysts would be expected to provide if called at trial." *Id.* Furthermore, the certificates had been "'made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,'" *id.* (quoting *Crawford,* 541 U.S. at 52, 124 S.Ct. 1354), and they were in fact prepared for the sole purpose of providing evidence in a subsequent prosecution. *Id.* The Court concluded that the certificates were testimonial in nature and triggered the defendant's Sixth Amendment protections. *Id.*

The dissent in *Melendez–Diaz* expressed concern over the decision's implications for equipment calibration records:

> Consider the independent contractor who has calibrated the testing machine. At least in a routine case, where the machine's result appears unmistakable, that result's accuracy depends entirely on the machine's calibration. The cali-

bration, in turn, can be proved only by the contractor's certification that he or she did the job properly. That certification appears to be a testimonial statement under the Court's definition: It is a formal, out-of-court statement, offered for the truth of the matter asserted, and made for the purpose of later prosecution. It is not clear, under the Court's ruling, why the independent contractor is not also an analyst.

*Id.* at 2545 (Kennedy, J., dissenting) (internal citation omitted). The majority responded:

> Contrary to the dissent's suggestion, we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case.... Additionally, documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records.

*Id.* at 2532 n. 1 (internal citations omitted).

■ This is the first time since *Melendez–Diaz* that we have reexamined whether breath test inspection certificates are testimonial and subject to the confrontation right, but we see no reason that *Melendez–Diaz* disturbs this Court's holdings in *Johnson, Jarrell, Rembusch,* and *Napier.* To the contrary, the foregoing language from the *Melendez–Diaz* majority appears to leave our prior decisions intact. The majority rejects the proposition that anyone involved in establishing the "accuracy of the testing device" must testify in person. It further states that "documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records." We acknowledge that this language is not decisive. *Melendez–Diaz* does not hold that routine calibration records are always nontestimonial.

But at a minimum it leaves the question unresolved and demands the same type of scrutiny that we have undertaken since *Crawford.* We analyzed the nature of inspection certificates in *Johnson, Jarrell, Rembusch,* and *Napier,* and we believe our conclusion that the certificates are nontestimonial remains valid today. The certificates do not comprise ex parte in-court testimony or its functional equivalent. They are not formalized testimonial materials like sworn affidavits. Moreover, while the certificates contemplate use in criminal trials, they are completed in advance of any specific alleged drunk-driving incident and breath test administration and are not created for the prosecution of any particular defendant. We thus reaffirm our position that certificates verifying routine inspection of breath test instruments are nontestimonial. Jurisdictions that have addressed this question post–*Melendez–Diaz* have generally reached the same conclusion. *See United States v. Forstell,* 656 F.Supp.2d 578, 580–82 (E.D.Va.2009) (certificates of accuracy for speed radar device, tuning fork, and Intoxilyzer held nontestimonial); *State v. Fitzwater,* 122 Hawai'i 354, 227 P.3d 520, 540 (2010) (exhibit certifying accuracy of police officer's speedometer held nontestimonial); *State v. Bergin,* 231 Or.App. 36, 217 P.3d 1087, 1089–90 (2009) (concluding that *Melendez–Diaz* does not overrule prior Oregon case law finding Intoxilyzer certificates nontestimonial). *But see People v. Carreira,* 27 Misc.3d 293, 893 N.Y.S.2d 844, 846 & n. 1 (N.Y.City Ct.2010) (Intoxilyzer inspection records excluded as testimonial; *Melendez–Diaz* footnote "winks at the issue" but "excruciatingly avoids answering the question of whether or not its holding specifically covers calibration and testing records").

Here the State offered a certificate of inspection and compliance for the Data-

Master used in Ramirez's chemical breath test. The certificate was prepared following routine inspection and was completed over two months before Ramirez's arrest and breath test administration. To be sure, the document was created for use in criminal investigations and judicial proceedings—even reflecting that it could be "duplicated as needed for use in Court"—but it was not prepared for a particular prosecution of any one defendant. Nor was it a sworn affidavit or other formalized testimonial document. In line with the foregoing, we find the certificate was nontestimonial under *Crawford* and *Melendez–Diaz*, and the admission of the certificate without live testimony from the certifier did not run afoul of Ramirez's Sixth Amendment rights. We conclude that the trial court did not err by admitting the DataMaster inspection certificate and Ramirez's breath test results.

Affirmed.

RILEY, J., concurs.

BARTEAU, S.J., concurs in result with separate opinion.

BARTEAU, Senior Judge, concurring in result.

I would also affirm the judgment of the trial court, but I respectfully disagree with the majority's conclusion that the State's Certificate of Inspection and Compliance of Breath Test Instruments ("Certificate"), which was used in this case to prove that the DataMaster was in compliance with the Department of Toxicology's accuracy requirements, is nontestimonial in nature. I therefore conclude that admission of that document violated Ramirez's Sixth Amendment right to confront witnesses against him.

I read the Supreme Court's decision in *Melendez–Diaz v. Massachusetts,* — U.S. ——, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009), as leading to a result opposite from the result reached by the majority. The certificates of analysis in *Melendez–Diaz,* and the Certificate in the current case, are functionally identical to live, in-court testimony. Furthermore, just as the certificates in *Melendez–Diaz* proved a fact necessary for the State's case, specifically that the substance Melendez–Diaz possessed was cocaine, *see id.* at 2533, the Certificate in this case was necessary to establish that the DataMaster was in compliance with the requirements issued by the Department of Toxicology. *See* Ind.Code § 9–30–6–5(d).

Furthermore, in *Melendez–Diaz,* the Court noted that a key consideration for the purposes of Sixth Amendment analysis is whether the creator of the document at issue could have reasonably believed "that the statement would be *available* for use at a later trial." *Melendez–Diaz,* 129 S.Ct. at 2532 (quoting *Crawford v. Washington,* 541 U.S. 36, 51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004)) (emphasis added). In the current case, the Certificate plainly provides that it "may be duplicated as needed for use in Court." Appellant's App. p. 98. The Certificate also provides that it is intended "for use pursuant to the Indiana law for implied consent to test for intoxication." *Id.* Thus, the person who executed the Certificate did so with the understanding that the Certificate was intended to support criminal investigations and prosecutions and would be available for use at a trial.

The Indiana Supreme Court's recent decision in *Pendergrass v. State,* 913 N.E.2d 703 (Ind.2009), *petition for cert. filed,* also provides useful guidance. In *Pendergrass,* a defendant was tried for molesting his daughter. *Id.* at 704. His daughter had become pregnant and had an abortion, and the State wanted to determine whether the defendant was the father of the aborted

fetus. *Id.* Forensic testing was performed, and the State sought to introduce into evidence two documents that were prepared by a forensic analyst at the Indiana State Police Laboratory. *Id.* One of the documents was a "Certificate of Analysis," which was prepared by a lab analyst and consisted of an inventory of the evidence submitted to the lab, a list of the tests performed, and indications of where the evidence and test results were sent. *Id.* Our Supreme Court determined that the Certificate of Analysis was testimonial in nature because it fitted "the definition of testimony as clarified by *Melendez–Diaz.*" *See id.* at 707.

In this case, the signer of the Certificate, like the analyst in *Pendergrass,* could have reasonably believed that the Certificate would be available for use at a later trial. Furthermore, like the Certificate of Analysis in *Pendergrass,* the Certificate in this case was the equivalent of live, in-court testimony, doing "precisely what a witness does on direct examination...." *Id.* at 706 (quoting *Davis v. Washington,* 547 U.S. 813, 828, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)) (emphasis omitted). In fact, the circumstances in Ramirez's case are more compelling for the application of Sixth Amendment protections than the circumstances in *Pendergrass.* The information provided by the Certificate of Analysis in *Pendergrass,* while no doubt helpful to the State's case, does not appear to have been necessary to prove an element of the offenses at issue or a foundational fact. By contrast, in this case the State submitted the Certificate to prove a statutorily mandated condition to the prosecution of the case, namely that the Data-Master was in compliance with the Department of Toxicology's requirements.

Based on the discussion and holdings in *Melendez–Diaz* and *Pendergrass,* I conclude that the Certificate is testimonial in nature. Thus, in my opinion, the trial court abused its discretion by admitting State's Exhibit 2, the Certificate, into evidence because admission of the Certificate violated Ramirez's Sixth Amendment protections. Without the Certificate, the State presented no evidence to establish that the DataMaster device that Officer Reese used to test Ramirez had been approved in accordance with the rules adopted by the Department of Toxicology. Therefore, the trial court also abused its discretion by admitting State's Exhibit 6, the DataMaster test results, into evidence. *See* I.C. § 9–30–6–5(d).

I acknowledge this Court's line of cases holding that certificates of inspection and compliance like the Certificate at issue in this case are not testimonial in nature. *See Johnson v. State,* 879 N.E.2d 649 (Ind. Ct.App.2008); *Jarrell v. State,* 852 N.E.2d 1022 (Ind.Ct.App.2006); *Rembusch v. State,* 836 N.E.2d 979 (Ind.Ct.App.2005), *reh'g denied, transfer denied;* and *Napier v. State,* 820 N.E.2d 144 (Ind.Ct.App.2005), *modified on reh'g,* 827 N.E.2d 565 (Ind.Ct. App.2005), *transfer denied, cert. denied,* 546 U.S. 1215, 126 S.Ct. 1437, 164 L.Ed.2d 134 (2006). All of those cases predate *Melendez–Diaz* and *Pendergrass,* and I decline to follow them because I conclude that *Melendez–Diaz* and *Pendergrass* compel a finding that the Certificate in this case was testimonial in nature.

Although I would hold that the trial court erred by admitting the Certificate and the DataMaster test results, I conclude that in this case the error was harmless. A denial of the right of confrontation is harmless error where the evidence supporting the conviction is so convincing that a jury could not have found otherwise. *Garner v. State,* 777 N.E.2d 721, 725 (Ind. 2002). The record must establish that there is no substantial likelihood that the evidence contributed to the verdict. *Bow-*

*man v. State,* 577 N.E.2d 569, 571 (Ind. 1991).

In this case, the jury found Ramirez guilty of operating a vehicle while intoxicated in a manner endangering a person, a class A misdemeanor, and operating a vehicle while intoxicated with an alcohol concentration equivalent to .08 or more, a class C misdemeanor, but the trial court entered a judgment of conviction on the class A misdemeanor alone. The evidence that supports Ramirez's conviction for operating a vehicle while intoxicated in a manner endangering a person is substantial and convincing. As the majority notes, Officer Reese observed Ramirez's vehicle weave back and forth within its lane and cross over the fog line. Ramirez's car almost hit a curb. After Officer Reese stopped Ramirez, he observed Ramirez display poor manual dexterity while Ramirez retrieved his license. In addition, Ramirez emanated a strong odor of alcohol and had red, bloodshot eyes. Finally, Ramirez failed all three field sobriety tests. Based upon this evidence, I conclude that there is not a substantial likelihood that the erroneously admitted DataMaster test results contributed to Ramirez conviction for the class A misdemeanor charge. Therefore, that conviction may stand despite the erroneous admission of the DataMaster evidence.

For these reasons, I respectfully concur in result.