**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DAVID L. JOLEY**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DANIEL MINNICK, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 92A03-1106-CR-228 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WHITLEY SUPERIOR COURT
The Honorable Douglas M. Fahl, Judge
Cause No. 92D01-0806-CM-350

**January 3, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**DARDEN, Judge**

<u>STATEMENT OF THE CASE</u>

Daniel Minnick appeals his convictions of operating a vehicle while intoxicated, a class A misdemeanor;[1] operating a motor vehicle with a blood alcohol concentration ("BAC") equivalent to at least .08 gram of alcohol, a class C misdemeanor;[2] and speeding, a class C infraction.[3]

We affirm.

<u>ISSUES</u>

I.      Whether the trial court violated Minnick's federal and state rights to confrontation when it admitted into evidence breath test instrument inspection certificates without live testimony from the technician who inspected the instrument.

II.     Whether the State presented sufficient evidence to support Minnick's convictions of operating a vehicle while intoxicated and speeding.

<u>FACTS</u>

Around 2:00 a.m. on June 15, 2008, Indiana State Trooper Jason Ward saw two motorcycles traveling in the left lane on a State highway going "pretty well in [excess] of the posted speed limit." (Tr. 31-32). Trooper Ward activated his radar and clocked the motorcycle driven by Minnick at eighty-four miles per hour. Trooper Ward stopped Minnick and immediately noticed the odor of alcohol on Minnick's breath. While

---

[1] Ind. Code § 9-30-5-2(b).

[2] I.C. § 9-30-5-1(a)(2).

[3] I.C. § 9-21-5-2(7).

2

Trooper Ward was talking to Minnick, he also noticed that Minnick was slurring some of his letters and spoke with a "thick tongue." (Tr. 35). Minnick was able to count backwards and recite the alphabet.

Trooper Ward, a certified chemical test operator, read the implied consent law to Minnick and subsequently conducted a chemical breath test on Minnick. The Indiana Department of Toxicology had issued a certificate of inspection on April 28, 2008, certifying that the BAC DataMaster used to conduct the test was operating correctly. Trooper Ward observed no anomalies during the test and received no indication that the DataMaster was malfunctioning. He followed the prescribed checklist for conducting the test, and the DataMaster purged itself after the test and returned to a zero reading. The test revealed that Minnick had a BAC of .09. Minnick admitted that he had been drinking rum and that he had started drinking around 9:00 p.m. and had not stopped drinking until around 2:00 a.m.

The State charged Minnick with class A misdemeanor operating a motor vehicle while intoxicated; class C misdemeanor operating a motor vehicle with a BAC of .08 or more; and class C infraction speeding. On June 24, 2008, a service call was made for the DataMaster because the instrument would not "return to zero." (Tr. 65, 67). The Department of Toxicology then certified that the instrument was inspected, repaired, and operating correctly. At trial, the State offered Minnick's breath test results as well as official certificates of compliance verifying the routine inspection of Officer Ward's DataMaster. The two DataMaster inspection certificates certified that on April 28, 2008 and June 24, 2008 inspections and tests had been conducted on the DataMaster and that

3

the machine was in good operating condition that satisfied the accuracy requirements of the State Department of Toxicology. Minnick objected to admission of the DataMaster inspection certificates on federal and state constitutional grounds. The trial court overruled the objections and admitted the certificates. The jury found Minnick guilty of all three charges. Minnick received a fine and an aggregate one-year sentence, suspended but for eight days.

DECISION

1.      Right of Confrontation

Minnick contends that the DataMaster inspection certificates were admitted in violation of his Sixth Amendment right to confrontation. He also contends that the certificates were admitted in violation of his confrontation right expressed in Article 1, Section 13 of the Indiana Constitution. Minnick notes that the inspector did not testify and that the certificates constitute prima facie evidence that the equipment (1) was inspected and approved by the Department of Toxocology and (2) was in proper working condition on the date the breath test was administered if the date of the approval was not more than 180 days before the date of the test. *See* Ind. Code § 9-30-6-5(c).

*A.      Sixth Amendment*

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The right to confrontation guaranteed by the Sixth Amendment is made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 406 (1965).

4

In *Ramirez v. State*, 928 N.E.2d 214 (Ind. Ct. App. 2010) we addressed the issue of whether the admission of DataMaster inspection certificates violate the Sixth Amendment. We noted that in *Crawford v. Washington*, 541 U.S. 36, 68 (2004), the United States Supreme Court held that the Confrontation Clause "bars admission of out-of-court, testimonial statements in criminal trials unless the declarant is unavailable to testify and the defendant had a prior opportunity for cross-examination." *Id*. at 217. We also noted that a "critical aspect of the *Crawford* holding is its application only to 'testimonial' statements." *Id*. We emphasized that it is "the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." *Id*. (quoting *Davis v. Washington*, 547 U.S. 813, 821 (2006)).

We then stated that following *Crawford*, this court on several occasions addressed "whether breath test inspection certificates are testimonial documents implicating the Sixth Amendment right to confrontation, and we routinely concluded that the certificates are nontestimonial." *Id*. (case citations omitted). We stated the varied reasoning behind the conclusion, including the reason that "the certificates are not prepared in anticipation of litigation in any particular case or with respect to implicating any specific defendant." *Id*. at 217-18. We noted that our holdings have been substantially in accord with the decisions of other jurisdictions. *Id*. at 218 (case citations omitted).

We observed that the Supreme Court revisited *Crawford* in *Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527, 2532 (2009), wherein it elaborated on the meaning of "testimonial" within the realm of forensic chemical testing. *Id*. We noted that in

5

*Melendez-Diaz*, the Court concluded that three "certificates of analysis" indicating that a seized substance was cocaine of a certain weight were testimonial in nature and triggered the defendant's Sixth Amendment protections. *Id*. (citing *Melendez-Diaz*, 129 S.Ct. at 2532)). We further noted that the Court held that the certificates "were in fact prepared for the sole purpose of providing evidence in a subsequent prosecution." *Id*.

In *Ramirez*, we observed that the dissent in *Melendez-Diaz* expressed concern over the decision's implications for equipment calibration records. *Id*. at 218-19. In response to this concern, the majority in *Melendez-Diaz* responded:

> Contrary to the dissent's suggestion, we do not hold, and it is not the case, that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing device, must appear in person as part of the prosecution's case . . . . Additionally, documents prepared in the regular course of equipment maintenance may well qualify as nontestimonial records.

129 S.Ct. at 2532 n. 1 (internal citations omitted).

In light of *Crawford* and *Melendez-Diaz*, we held in *Ramirez* that DataMaster inspection certificates are not "ex parte in-court testimony or its functional equivalent" and that they are not formalized testimonial materials. 928 N.E.2d at 219. "Moreover, while the certificates contemplate use in criminal trials, they are completed in advance of any specific alleged drunk-driving incident and breath test administration and are not created for the prosecution of any particular defendant." *Id.* Accordingly, we reaffirmed previous cases holding that certificates verifying routine inspection of breath test instruments are nontestimonial. *Id*.

6

Minnick argues that the reasoning set forth in *Ramirez* and related cases was supplanted by the United States Supreme Court in *Bullcoming v. New Mexico*, 131 S.Ct. 2705 (2011). In *Bullcoming*, the defendant was arrested for and charged with driving while intoxicated ("DWI"). The principal evidence against him was a forensic laboratory report certifying that his blood-alcohol concentration was above the threshold for aggravated DWI. The trial court admitted the report over objection based on the Sixth Amendment, even though the forensic analyst who completed, signed, and certified the report, did not testify.

The United States Supreme Court held that the trial court erred in admitting the report. The Court held that the laboratory test report of the chemical blood analysis was created solely for an "evidentiary purpose" and was "made in aid of a police investigation." *Id.* at 2717. Therefore, the report "rank[ed] as testimonial." *Id.*

The actual issue before the Court was whether the defendant's confrontation right was satisfied by live testimony from a surrogate analyst who was generally familiar with the laboratory's procedures but was not the person who tested the blood, not whether the definition of "testimonial" needed to be reconsidered. *Id.* at 2710, 2713. Therefore, the case did nothing to alter the definition of "testimonial" evidence as set forth in *Crawford* and *Melendez-Diaz*. Rather, the Court held that *Melendez-Diaz* forecloses any argument that the laboratory test report was nontestimonial. *Id.* at 2716-17. Because the decision in *Bullcoming* does not alter the definition of "testimonial," it does not change our analysis of whether DataMaster inspection certificates fit within that definition. Indeed, in Justice Sotomayor's concurrence, she repeated the language from *Melendez-Diaz* that

7

not every person whose testimony may be relevant to establishing the "accuracy of the testing device" must appear in person. *Id.* at 2721 n. 2.

To be sure, neither *Melendez-Diaz* nor *Bullcoming* specifically state that routine calibration records are always nontestimonial. *See Ramirez*, 928 N.E.2d at 219. However, we echo the *Ramirez* court in holding that "at a minimum [the Supreme Court] leaves the question unresolved and demands the same type of scrutiny that we have undertaken since *Crawford.*" *See id.* In short, under *Ramirez* and similar cases, the trial court did not violate the Sixth Amendment when it admitted the DataMaster inspection certificates into evidence.

### B. Article 1, Section 13

Article 1, Section 13 of the Indiana Constitution provides that in all criminal prosecutions, the defendant "shall have the right . . . to meet the witnesses face to face." Article 1, Section 13 differs from the federal Confrontation Clause by emphasizing a face-to-face meeting. This is a protection directed to *how* confrontation must occur (in person); it is not directed to *who* should be confronted under the testimonial/nontestimonial distinction.

In *Turner v. State*, 953 N.E.2d 1039, 1055 (Ind. 2011) (citing *Michigan v. Bryant*, 131 S.Ct. 1143 (2011)), our supreme court held that the admissibility of a nontestimonial statement is the concern of state and federal rules of evidence, not the Confrontation Clause. The court noted that the federal and Indiana rights to confrontation are "to a considerable degree" co-extensive and that it is the defendant's duty to explain "why an

analysis of the Indiana constitution concerning the testimonial character of a statement is or should be any different than the federal analysis." *Id.* n. 8.

In the present case, Minnick relies on the same arguments to substantiate his Article 1, Section 13 claim, albeit with an emphasis on the "face to face" language therein, as he did in substantiating his federal confrontation claim. Minnick makes no significant distinction between testimonial and nontestimonial evidence. He does not show why the testimonial/nontestimonial analysis should be any different under Article 1, Section 13 than it is under the federal confrontation provision. Accordingly, he does not establish a violation of our constitution.

2. <u>Sufficiency of the Evidence</u>

Minnick contends that the State failed to present sufficient evidence to support his operating a motor vehicle while intoxicated and speeding convictions. Our standard of review for sufficiency claims is well settled. In reviewing sufficiency of the evidence claims, this court does not reweigh the evidence or assess the credibility of witnesses. *Davis v. State*, 791 N.E.2d 266, 269 (Ind. Ct. App. 2003), *trans. denied.* We consider only the evidence most favorable to the judgment, together with all reasonable and logical inferences drawn therefrom. *Id.* at 269-70. The conviction will be affirmed if there is substantial evidence of probative value to support the conclusion of the trier of fact. *Id.* at 270.

A. *Operating a Vehicle While Intoxicated*

In order to convict Minnick of class A misdemeanor operating a motor vehicle while intoxicated, the State had to prove that Minnick (1) operated a vehicle; (2) while

intoxicated; and (3) in a manner that endangered a person. *See* I.C. § 9-30-5-2(b). Minnick contends that the State failed to show either that he was intoxicated or that he endangered a person.

"Intoxicated" is defined as being under the influence of alcohol "so that there is an impaired condition of thought and action and the loss of normal control of a person's faculties." I.C. § 9-13-2-86. Among other factors, intoxication may be established through evidence of (1) consumption of significant amounts of alcohol; (2) impaired attention and reflexes; (3) watery or bloodshot eyes; (4) an odor of alcohol on the breath; (5) unsteady balance; (6) failed field sobriety tests; or (7) slurred speech. *Fields v. State*, 888 N.E.2d 304, 307 (Ind. Ct. App. 2008) (quoting *Ballinger v. State*, 717 N.E.2d 939, 943 (Ind. Ct. App. 1999)).

Here, the State presented evidence that Minnick had a BAC of .09, which is prima facie evidence, standing alone, of intoxication. *See* I.C. 9-13-2-131; *Temperly v. State*, 933 N.E.2d 558, 567 (Ind. Ct. App. 2010), *trans. denied*. Prima facie evidence is evidence that is sufficient on its face to establish a given fact or sustain judgment unless contradictory evidence is produced. *Temperly, id.* Such contradictory evidence must rebut the prima facie case to the satisfaction of the trier of fact. *Hughes v. State*, 481 N.E.2d 135, 137 (Ind. Ct. App. 1985). Here, of course, Minnick failed to rebut the prima facie case to the satisfaction of the jury.

Furthermore, the State presented additional evidence that upon being stopped by Trooper Ward, Minnick smelled of alcohol, slurred some of his letters, spoke with a "thick tongue," and admitted that he had been steadily drinking rum for approximately

10

five hours. Minnick's argument is merely a request to reweigh the evidence, which we cannot do. *See Temperly, id*. We conclude that the State presented sufficient evidence to prove intoxication.

The endangerment element is established by evidence showing that the defendant's condition or operating manner could have endangered any person, including the public, the police, or himself. *Vanderlinden v. State*, 918 N.E.2d 642, 644 (Ind. Ct. App. 2009), *trans. denied*. Endangerment does not require that a person other than the defendant be in the area where the act occurred. *Id*. at 644-45. We have repeatedly held that evidence of excessive speed, standing alone, is sufficient to support a finding of endangerment. *Id*. at 646.

In this case, Minnick was driving his motorcycle at eighty-four miles per hour. He argues that this evidence is insufficient because, although Trooper Ward testified that Minnick's speed was "pretty well" in excess of the speed limit, tr. 32, no witness testified as to the precise speed limit on the State Road upon which Minnick was traveling.

There is no set of facts, however, under which driving at eighty-four miles per hour could be anything other than significantly in excess of the speed limit. Indiana Code section 9-21-5-2 sets forth the maximum speed limits authorized by law on various types of roadways. The highest speed allowed on any Indiana roadway is seventy miles per hour. Minnick was exceeding the maximum authorized speed by fourteen miles per hour. This is sufficient to show endangerment. *See Vanderlinden*, 918 N.E.2d at 646 n. 1 (holding that driving sixteen miles per hour over the speed limit constituted endangerment).

11

*B.    Speeding*

Minnick's sole challenge to the sufficiency of the evidence pertaining to his speeding conviction is to reiterate that the State introduced no evidence of the posted speed limit on the State Road. However, in addition to Trooper Ward's testimony that Minnick was traveling "pretty well in [excess] of the posted speed limit," tr. 32-33, the State also presented evidence that Minnick was traveling at eighty-four miles per hour. As noted above, Minnick was traveling fourteen miles per hour over the maximum Indiana speed limit. There is sufficient evidence to support Minnick's conviction.

## CONCLUSION

Minnick's right to confrontation under either the Sixth Amendment to the United States Constitution or Article 1, Section 13 of the Indiana Constitution was not violated by the admission of the DataMaster inspection certificates. Furthermore, the State presented sufficient evidence to support Minnick's convictions of operating while intoxicated and speeding.

Affirmed.

BAKER, J., and BAILEY, J., concur.

12