Timothy **CRANSTON**, Appellant–
Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 29A02–1003–CR–374.

Court of Appeals of Indiana.

Nov. 8, 2010.

John L. Tompkins, Brown Tompkins Lory & Mastrian, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Timothy Cranston appeals his conviction for Class A misdemeanor operating a vehicle while intoxicated with an alcohol concentration of .15 or greater. Cranston was arrested for drunk driving. He submitted to a B.A.C. Datamaster chemical breath test. The Datamaster machine printed an evidence ticket stating that Cranston's blood alcohol concentration was .15. At trial, the State introduced the evidence ticket along with foundational testimony from the arresting officer. Cranston argues that the admission of the Datamaster ticket without live testimony from an equipment technician violated his Sixth Amendment right to confrontation. We conclude that the admission of the ticket did not offend Cranston's confrontation rights. A Datamaster evidence ticket is a mechanically-produced readout which cannot constitute "testimonial hearsay" under *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). We affirm the judgment of the trial court.

### Facts and Procedural History

On the evening of November 14, 2008, Cranston was pulled over on suspicion of drunk driving. Arresting Officer Lawrence Bendzen performed a battery of field sobriety tests. Cranston failed them all. Officer Bendzen transported Cranston to the county jail to conduct a certified chemical breath test.

Officer Bendzen administered the chemical breath test using a B.A.C. Datamaster

with keyboard. Officer Bendzen first made sure that no foreign substances were inside Cranston's mouth. He then waited twenty minutes before proceeding. Officer Bendzen next entered a password on the Datamaster, inserted an evidence ticket into the machine, and typed in Cranston's biographical information. The machine displayed the instruction, "Please blow." Officer Bendzen placed a new mouthpiece onto the Datamaster's breath tube, and Cranston blew into the instrument. The Datamaster printed a ticket indicating that Cranston had provided an invalid breath sample. Officer Bendzen waited another twenty minutes and replaced the mouthpiece. Cranston delivered a second breath sample. This time the Datamaster printed a ticket reading in pertinent part:

— BREATH ANALYSIS —

| BLANK TEST | .00 | 00:47 |
| INTERNAL STANDARD | VERIFIED | 00:47 |
| SUBJECT SAMPLE | .15 | 00:51 |
| BLANK TEST | .00 | 00:52 |

ALCOHOL READINGS ARE EXPRESSED AS GRAMS OF ALCOHOL PER 210 LITERS OF BREATH

State's Ex. 5.

The State charged Cranston with Count I, Class A misdemeanor operating while intoxicated endangering a person, and Count II, Class A misdemeanor operating a vehicle while intoxicated with an alcohol concentration equivalent to .15 or greater. Cranston was tried before a jury.

The State introduced at trial the evidence ticket printed from the Datamaster machine. Officer Bendzen authenticated the ticket, testified to his own certification in performing chemical breath tests, and explained the steps he followed in administering Cranston's test. The State also introduced an official certificate of compliance verifying routine inspection of the Datamaster. The certificate was issued by the Indiana State Department of Toxicolo-gy. It stated that the Datamaster in question had been examined on November 10, 2008, that the instrument was in good operating condition, and that it satisfied the accuracy requirements established by the Department of Toxicology Regulations. The certificate was signed by a director at the Department of Toxicology. The State did not call the Datamaster certifier.

Cranston objected to, among other things, the admission of the Datamaster evidence ticket. Cranston argued that introduction of the ticket violated his Sixth Amendment right to confrontation. The trial court overruled Cranston's objection and admitted the exhibit.

The jury acquitted Cranston on Count I but found him guilty of Count II, operating while intoxicated with an alcohol concentration of .15 or greater. Cranston now appeals.

**Discussion and Decision**

Cranston argues that the admission of the Datamaster evidence ticket violated his Sixth Amendment right to confrontation because he was afforded no opportunity to cross-examine "the forensic scientist who selected and prepared the breath test machine" or "any witness with knowledge of the scientific principles relied on by the BAC Datamaster, about the bases of that machine[']s conclusions regarding the type and quantity of alcohol present, or about the reliability or acceptance of those principles and conclusions." Appellant's Br. p. 4, 16. To be clear, Cranston predicates his claim not on the Datamaster certificate of inspection, but rather on the evidence ticket itself. He maintains that a "Datamaster Evidence Ticket prepared for use in a criminal prosecution is testimonial' evidence and, therefore, subject to the Confrontation Clause." *Id.* at 3.

The Sixth Amendment to the United States Constitution provides that " [i]n all criminal prosecutions, the accused shall en-

joy the right ... to be confronted with the witnesses against him." The right to confrontation guaranteed by the Sixth Amendment is made applicable to the states by the Due Process Clause of the Fourteenth Amendment. *Pointer v. Texas,* 380 U.S. 400, 406, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965).

In *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court explained that the Confrontation Clause guarantees the right to confront " 'witnesses' against the accused—in other words, those who 'bear testimony.' " *Id.* at 51, 124 S.Ct. 1354. The Supreme Court concluded that the Clause bars admission of out-of-court, testimonial statements by a witness unless the declarant is unavailable to testify and the defendant had a prior opportunity to cross-examine. *Id.* at 68, 124 S.Ct. 1354.

A critical aspect of *Crawford* is its application only to statements qualifying as hearsay. *Cf. id.* at 59 n. 9, 124 S.Ct. 1354; *Davis v. Washington,* 547 U.S. 813, 823–24, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006); *see also* 30A Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure* §§ 6371.2, 6371.4 (Supp.2010).

Hearsay is generally understood to be a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. *See, e.g.,* Ind. Evidence Rule 801(c); Fed.R.Evid. 801(c). A "statement" is (1) an oral or written assertion or (2) nonverbal conduct "of a person," if it is intended by the person as an assertion. Evid. R. 801(b); Fed.R.Evid. 801(b). A declarant is "a person" who makes a statement. Evid. R. 801(a); Fed.R.Evid. 801(a).

It is well-settled that "[b]ecause a declarant must be a 'person,' a statement automatically generated by a computer cannot be hearsay." 13 Robert Lowell Miller, Jr., *Indiana Practice: Indiana Evidence* § 801.201 (3d ed.2007); *see also Miles v. State,* 777 N.E.2d 767, 772 (Ind. Ct.App.2002). So-called " '[m]echanical hearsay' is not 'hearsay' because the problem is one of relevance—was the machine operating properly when it spoke, not a problem of perception, recollection, narration, or sincerity on the part of the machine.' " Wright & Graham, *supra,* § 6371.2 n. 292. Mechanically-generated or computerized information may constitute hearsay when incorporating a certain degree of human input and/or interpretation. *See id.* § 6371.4 n. 53; *cf. Melendez–Diaz v. Massachusetts,* ——— U.S. ———, 129 S.Ct. 2527, 2532, 174 L.Ed.2d 314 (2009); *Pendergrass v. State,* 913 N.E.2d 703, 704–07 (Ind.2009), *cert. denied,* ——— U.S. ———, 130 S.Ct. 3409, 177 L.Ed.2d 323 (2010). But the B.A.C. Datamaster, for example, while requiring administrative input from the test operator and a breath sample from the test subject, calculates and prints a subject's blood alcohol concentration through a mechanical process involving no material human intervention. *See, e.g., Luginbyhl v. Commonwealth,* 46 Va.App. 460, 618 S.E.2d 347, 351 (2005) ("[T]he breath test result is generated by a machine and does not depend on the administering police officer's 'veracity or perceptive abilities.' ").

As mechanically-generated data are not hearsay statements in the first instance, the prevailing view is that they cannot constitute testimonial hearsay for purposes of *Crawford* and the Confrontation Clause. *See United States v. Moon,* 512 F.3d 359, 362 (7th Cir.2008) ("[D]ata are not 'statements' in any useful sense. Nor is a machine a 'witness against' anyone. If the readings are 'statements' by a 'witness against' the defendants, then the machine must be the declarant. Yet how could one cross-examine a gas chromatograph?"); *United States v. Lamons,* 532 F.3d 1251, 1263 (11th Cir.2008) ("[T]he witnesses with whom the Confrontation Clause is con-

cerned are *human* witnesses[.]"); *United States v. Washington*, 498 F.3d 225, 230–31 (4th Cir.2007) ("[T]he raw data generated by the machines do not constitute 'statements,' and the machines are not 'declarants.' As such, no out-of-court statement implicating the Confrontation Clause was admitted into evidence ...."); *see also* Wright & Graham, *supra*, § 6371.4.

Accordingly, courts have agreed that the evidence ticket produced by a chemical breath test machine is not testimonial hearsay subject to *Crawford* and the Sixth Amendment. *See, e.g., People v. Dinardo*, —— N.W.2d ——, No. 294194, 2010 WL 3984545, slip op. at 5 (Mich.Ct.App. Oct. 12, 2010); *State v. Chun*, 194 N.J. 54, 943 A.2d 114, 146–47 (2008); *Wimbish v. Commonwealth*, 51 Va.App. 474, 658 S.E.2d 715, 719–20 (2008); *Luginbyhl*, 618 S.E.2d at 351; Wright & Graham, *supra*, § 6371.2.

We concur and likewise conclude that Datamaster evidence tickets are non-testimonial non-hearsay. As such, the tickets do not implicate *Crawford* and the Sixth Amendment right to confrontation.

This is not to say, however, that mechanically-produced data like Datamaster results do not require accompanying human testimony. *See, e.g., Napier v. State*, 820 N.E.2d 144, 150–51 (Ind.Ct.App.2005), *modified in part on reh'g*, 827 N.E.2d 565 (Ind.Ct.App.2005), *trans. denied.* In *Napier*, the defendant was charged with operating while intoxicated with an alcohol concentration of .08 or more. *Id.* at 145. The State introduced his Datamaster evidence ticket at trial, but neither the test operator nor any other live witness testified. *Id.* at 146. The defendant argued in part that the evidence ticket was inadmissible under the Indiana Code, the court rules, and the Confrontation Clause. *Id.* at 150. This Court agreed and held that the test results were improperly admitted. *Id.* at 151. The Court reasoned:

Napier was not only precluded from conducting any cross-examination with respect to the breath test operator's qualifications, he was not afforded the opportunity to question or attack the purported results of his breath test. Without that "live" testimony, Napier could not challenge those results. And the ability to challenge the breath test results directly pertains to the issue of guilt or innocence in this case.

\* \* \* \* \* \*

In these circumstances, we are of the view that the State's manner of proving Napier's breath test results failed because the State failed to lay an adequate evidentiary foundation for their admission into evidence. We must conclude, therefore, that the State's failure to present any "live testimony" at trial from the officer who conducted the tests runs afoul of the Confrontation Clause of the Sixth Amendment to the United States Constitution in light of *Crawford.* That is, the State failed to establish an adequate evidentiary foundation for the admission of the test results into evidence.

*Id.* To the extent *Napier* finds the evidence ticket inadmissible on Sixth Amendment grounds—thus implying that the ticket constitutes testimonial hearsay—we respectfully disagree. But the *Napier* outcome is probably better understood as a matter of foundation and/or relevancy. "[T]he only way the printout was relevant was if the operator testified that it was used in the proper manner—the real problem, but not one properly within the realm of *Crawford.*" Wright & Graham, *supra*, § 6371.2 n. 295; *see also id.* § 6371.4 (" '[M]echanical hearsay' does require human testimony; someone has to testify that the machine was operating properly at the time it made the statement."). Or one might say that without testimony from

the operator establishing that all proper testing procedures were followed, the State failed to meet the admissibility requirements of the Indiana Code and administrative regulations. *See* Ind.Code § 9–30–6–5(d); 260 Ind. Admin. Code 1.1–4–8 (2010) (see http://www.in.gov/legislative/iac/). At any rate, the deficiencies addressed in *Napier* do not present themselves in the case at bar, for here the State supplied the necessary foundational testimony from the test administrator establishing that all approved testing procedures were observed. The State also introduced an official inspection certificate verifying that the Datamaster was accurate and in proper working condition.

We finally note that the only actual hearsay at play in this case was the above-mentioned Datamaster certificate of inspection. That hearsay was admissible pursuant to the Indiana Code, *see* Ind. Code § 9–30–6–5(c), and this Court has routinely held that Datamaster inspection certificates are non-testimonial documents presenting no confrontation problems of their own, *see Ramirez v. State*, 928 N.E.2d 214, 219–20 (Ind.Ct.App.2010), *trans. denied; see also Johnson v. State*, 879 N.E.2d 649, 660 (Ind.Ct.App.2008); *Jarrell v. State*, 852 N.E.2d 1022, 1026 (Ind.Ct.App.2006); *Rembusch v. State*, 836 N.E.2d 979, 982 (Ind.Ct.App.2005), *reh'g denied, trans. denied; Napier*, 820 N.E.2d at 150.

We conclude that the introduction of the Datamaster evidence ticket did not run afoul of Cranston's Sixth Amendment confrontation rights. The trial court therefore did not err by admitting it.

Affirmed.

MAY, J., and ROBB, J., concur.