**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 22 2013, 6:12 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**STEPHEN T. OWENS**
Public Defender of Indiana

**LINDA G. NICHOLSON**
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JODI KATHRYN STEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

TONY MAYS,                          )
                                    )
    Appellant-Petitioner,       )
                                    )
       vs.                   )   No. 84A04-1301-PC-6
                                    )
STATE OF INDIANA,                   )
                                    )
    Appellee-Respondent.        )

APPEAL FROM THE VIGO SUPERIOR COURT
The Honorable John T. Roach, Judge
Cause No. 84D01-1001-PC-52

**July 22, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Tony Mays appeals the post-conviction court's denial of his petition for post-conviction relief. We affirm.

## Issue

Mays raises one issue, which we restate as whether he received ineffective assistance of appellate counsel.

## Facts

The facts, as stated in Mays's direct appeal, follow:

> In early 2007, Confidential Informant 702 ("CI 702") was arrested on a misdemeanor charge in Vigo County. CI 702 spoke with Detective Denzil Lewis ("Detective Lewis") about Mays. They agreed that in return for the State not filing the misdemeanor charge, CI 702 would cooperate with the narcotics investigation of Mays and that she would be paid cash for each controlled buy.
>
> Prior to each of the four controlled buys, CI 702 was tested for drugs, found clean, searched, and given forty dollars to buy drugs. The first controlled "buy" occurred on March 29, 2007. Detective Lewis listened as CI 702 called Mays on Mays's cell phone. CI 702 asked for "something for stress." Mays replied, "Alright." Tr. p. 79, State's Vol. Ex. 2.
>
> CI 702 was outfitted with a video/audio recording device that makes a digital recording, also known as the "Hawk." Detective Lewis had used this device hundreds of times and could not alter the recording. CI 702 was driven to within one-half block of Mays's location. She walked the rest of the way to Mays's location. After CI 702 met Mays, they spoke briefly. Mays then sold CI 702 .40 grams of cocaine for forty dollars. CI 702 returned to Detective Lewis and gave him the cocaine. Detective Lewis secured the recording.

On April 2, 2007, a second controlled buy occurred. Detective Lewis and CI 702 followed the same procedure as during the first controlled buy. Again, Mays sold CI 702 .40 grams of cocaine for forty dollars. CI 702 returned and gave the cocaine to Detective Lewis and was searched. Detective Lewis secured the recording.

The third controlled buy occurred on April 24, 2007. Detective Lewis and CI 702 followed the same procedure as during the first controlled buy. CI 702 purchased 1.10 grams of cocaine in exchange for the buy money. CI 702 returned with the cocaine to Detective Lewis. Detective Lewis secured the recording.

The fourth controlled buy occurred on May 3, 2007. The same procedures were used during this buy as with the prior controlled buys. CI 702 met Mays at a motel in Terre Haute. CI 702 went to a room at that motel and knocked. She spoke with the occupants of the room as Mays prepared her cocaine. Mays sold .70 grams of cocaine for fifty dollars of buy money to CI 702. CI 702 returned to Detective Lewis with the cocaine. She was searched and Detective Lewis secured the recording.

Detective Lewis decided to arrest Mays based on the four controlled buys. Mays was arrested after he left the motel room. Detective Lewis then sought a search warrant for the motel room. After receiving the search warrant, the motel room was searched revealing the buy money, 32.6 grams of cocaine, baking soda, two firearms, and a digital scale.

The State charged Mays with one count of Class A felony dealing in cocaine, four counts of Class B felony dealing cocaine, and one count of Class B felony unlawful possession of a firearm by a serious violent felon. Prior to trial, Mays moved to suppress the evidence found in the motel room and for formal disclosure of the confidential informant's identity. The trial court denied both motions.

During the jury trial, the State presented the digital recordings of the four controlled buys. The State did not call CI 702 as a witness. During jury deliberations, the jury asked

to review the controlled buy recordings but did not have the means to do so. Mays objected to the jury's two requests to review the recordings, which the trial court overruled. The trial court decided to allow the jury to view the recordings in the same manner as viewed during trial, using the State's laptop with a projector. Mays objected to not being present during the viewing. After the trial court explained that the jury was actively deliberating, Mays did not object.

The jury returned guilty verdicts for two counts of Class B felony dealing cocaine but not on the one count of Class A felony dealing cocaine or the other count of Class B felony dealing cocaine. Prior to sentencing, Mays filed a motion to set aside the verdicts based upon the jury's use of the State's laptop to view the recordings. The State objected. After a hearing, the trial court denied the motion. The trial court sentenced Mays to an aggregate eighteen-year term.

Mays v. State, 907 N.E.2d 128, 130-31 (Ind. Ct. App. 2009), trans. denied.

Mays filed a direct appeal and argued that: (1) the trial court erred by denying his motion to compel disclosure of the confidential informant's identity; (2) the trial court abused its discretion by admitting the audio/video recordings of the controlled buys because the confidential informant did not testify at the trial; (3) the trial court erred by allowing the jury to review the recordings during deliberations outside of Mays's presence; and (4) the search warrant was invalid. We rejected Mays's arguments and affirmed his convictions. Of particular relevance to this post-conviction proceeding, we addressed Mays's argument regarding the admission of the recordings and concluded:

Mays's assertion that in order to introduce the video, the State must have called CI 702 to testify that the video accurately represented what occurred is patently incorrect. Instead, pursuant to the "silent witness" theory, "videotapes may be admitted as substantive evidence, but 'there must be a strong showing of [the videotape's] authenticity and competency.'" McHenry v. State, 820 N.E.2d 124, 128 (Ind.

4

2005) (quoting Edwards v. State, 762 N.E.2d 128, 136 (Ind. Ct. App. 2002), trans. denied). In addition, there must be a showing that the videotape has not been altered. See Edwards, 762 N.E.2d at 136; Bergner v. State, 397 N.E.2d 1012, 1017 (Ind. Ct. App. 1979) (discussing photographs). "In cases involving photographs [or videos] taken by automatic cameras . . . there should be evidence as to how and when the camera was loaded, how frequently the camera was activated, when the photographs were taken, and the processing and chain of custody of the film after its removal from the camera." Kindred v. State, 524 N.E.2d 279, 298 (Ind. 1988) (quoting Bergner, 397 N.E.2d at 1017). In regard to this last requirement, "the State is not required to exclude every reasonable possibility of tampering, but rather must only provide reasonable assurance that an exhibit has passed through various hands in an undisturbed condition." Id. at 298-99.

Here, Officer Lewis testified regarding the nature of the Hawk, that he personally prepared the Hawk for recording, that he personally took the Hawk and downloaded the video onto his computer and copied the video onto the CD introduced into evidence, that the video contained on the CD was consistent with what he knew to have taken place, and that he had no reason to believe that the CD had been altered or tampered with in any way. We conclude that the State laid a proper foundation for the admission of the video evidence. See Kindred, 524 N.E.2d at 298-99. The trial court did not abuse its discretion in admitting the audio-visual evidence.

Id. at 131-32. Our supreme court denied transfer.

Mays then filed a pro se petition for post-conviction relief in January 2010. In April 2012, counsel filed an amended petition for post-conviction relief arguing that Mays received ineffective assistance of appellate counsel because appellate counsel had failed to argue the admission of the recordings and Detective Lewis's testimony without the confidential informant's testimony violated Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004). At the post-conviction hearing, Mays's appellate counsel

5

testified that he did not believe that <u>Crawford</u> was applicable because the recordings were not "testimonial evidence." P-C.R. Tr. p. 14. The post-conviction court denied Mays's petition for post-conviction relief. Its findings of fact and conclusions thereon provide in part:

> Petitioner's claim for relief is that the CI did not testify at trial, therefore, when the audio-visual recordings were admitted into evidence, petitioner was denied his constitutional right to cross-examine and confront the CI, and had appellate counsel raised <u>Crawford. v. Washington</u> in support of his argument on appeal, the result would have been different. There are several dispositive flaws with this position.

> First, under the "silent witness" rule, the testimony of the CI was not necessary to introduce the audio-visual recordings. . . .

> More importantly, the audio-visual evidence presented against Petitioner at trial was not testimony by the CI. The Confrontation Clause is concerned with witnesses against the accused—those who "bear testimony" against a criminal defendant. <u>Crawford v. Washington</u>, 541 U.S. 36, 51 (2004); <u>Cranston v. State</u>, 936 N.E.2d 342, 344-345 (Ind. Ct. App. 2010). While petitioner is absolutely correct that under <u>Crawford</u> the constitutional right to confrontation precludes the admission of testimonial substantive evidence unless the declarant is unavailable and the accused has had a prior opportunity to cross examine the declarant, petitioner is just as equally incorrect in his assertion that <u>Crawford</u> applies, and provides ground for relief, in this matter.

> Petitioner's case does not fall squarely within the proscriptions of <u>Crawford</u> because the CI did not testify against petitioner via the audio-visual recordings of the controlled buy transactions which convicted him. These recordings show petitioner selling drugs, they do not contain statements of the CI used as evidence of petitioner's crimes. While the CI was certainly involved in the transactions as the buyer, this case is not one in which the CI's testimony about

6

her involvement is necessary. The actions of petitioner, coupled with the authenticity and accuracy of the recordings, are the substance of the evidence that convicted petitioner, not anything the CI said, or did, on the electronic recordings.

Petitioner is also correct that Crawford reasoned that statements made for use at trial are "testimonial" and therefore subject to confrontation and cross examination rights, but, again, petitioner misapplies Crawford. It was not the statements of the CI which were procured with an eye toward use at trial. The damning "statements" introduced into evidence were petitioner's own deeds and words displayed during his drug sales to the CI. Having the CI present at trial, or available and subject to cross-examination before trial, would not have tested anything. While having the CI testify would have supported defense counsel's effort to denigrate the investigation because the jury, in his words, would not like the police "sending a prostitute" at people—a theory he confirmed during the PCR hearing—the fact remains that the veracity of the videotaped evidence could not be confirmed nor dispelled by cross examination of the CI.

App. pp. 72-74. The post-conviction court noted that the confidential informant's testimony "merely gave context to the transactions, and, as such, were not hearsay." Id. at 73 n.1. Mays now appeals.

## Analysis

Mays challenges the denial of his petition for post-conviction relief. A court that hears a post-conviction claim must make findings of fact and conclusions of law on all issues presented in the petition. Pruitt v. State, 903 N.E.2d 899, 905 (Ind. 2009) (citing Ind. Post-Conviction Rule 1(6)). "The findings must be supported by facts and the conclusions must be supported by the law." Id. Our review on appeal is limited to these findings and conclusions. Id. Because the petitioner bears the burden of proof in the post-conviction court, an unsuccessful petitioner appeals from a negative judgment. Id.

7

(citing P-C.R. 1(5)).  "A petitioner appealing from a negative judgment must show that the evidence as a whole 'leads unerringly and unmistakably to a conclusion opposite to that reached by the trial court.'"  Id. (quoting Allen v. State, 749 N.E.2d 1158, 1164 (Ind. 2001), cert. denied).  Under this standard of review, "[we] will disturb a post-conviction court's decision as being contrary to law only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion."  Id.

Mays argues that he received ineffective assistance of appellate counsel.  To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his or her counsel's performance was deficient and that the petitioner was prejudiced by the deficient performance.  Ben-Yisrayl v. State, 729 N.E.2d 102, 106 (Ind. 2000) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)), cert. denied).  A counsel's performance is deficient if it falls below an objective standard of reasonableness based on prevailing professional norms.  French v. State, 778 N.E.2d 816, 824 (Ind. 2002).  To meet the appropriate test for prejudice, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.  Failure to satisfy either prong will cause the claim to fail.  Grinstead v. State, 845 N.E.2d 1027, 1031 (Ind. 2006).  Most ineffective assistance of counsel claims can be resolved by a prejudice inquiry alone.  Id.

8

Mays argues that his appellate counsel was ineffective for failing to raise Crawford with respect to the recordings on direct appeal. Because the strategic decision regarding which issues to raise on appeal is one of the most important decisions to be made by appellate counsel, appellate counsel's failure to raise a specific issue on direct appeal rarely constitutes ineffective assistance. See Taylor v. State, 717 N.E.2d 90, 94 (Ind. 1999). The Indiana Supreme Court has adopted a two-part test to evaluate the deficiency prong of these claims: (1) whether the unraised issues are significant and obvious from the face of the record; and (2) whether the unraised issues are "clearly stronger" than the raised issues. Bieghler v. State, 690 N.E.2d 188, 194 (Ind. 1997), cert. denied. If this analysis demonstrates deficient performance by counsel, the court then examines whether the issues that appellate counsel failed to raise "would have been clearly more likely to result in reversal or an order for a new trial." Id.

We first note that Mays incorrectly argues that his trial counsel raised Crawford with respect to the recordings. Mays's citation to the record in support of this assertion does not pertain to the confidential informant or the admission of the recording. Consequently, Mays's appellate counsel would have been required to establish that the admission of the recordings resulted in fundamental error. See, e.g., Hoglund v. State, 962 N.E.2d 1230, 1239 (Ind. 2012) ("In order to be fundamental, the error must represent a blatant violation of basic principles rendering the trial unfair to the defendant and thereby depriving the defendant of fundamental due process."). Mays's argument fails because he cannot demonstrate error in the admission of the recordings, much less fundamental error.

9

The Sixth Amendment to the United States Constitution, made applicable to the States via the Fourteenth Amendment, states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination. Crawford, 541 U.S. at 59, 124 S. Ct. at 1369. Crawford clarified, however, that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Id. at 59 n.9, 124 S. Ct. at 1369.

Mays argues that the recordings were testimonial.[1] However, this court and numerous others have rejected the same argument. In Lehman v. State, 926 N.E.2d 35, 38 (Ind. Ct. App. 2010), trans. denied, we held that a confidential informant's recorded statements during a controlled buy were not introduced for the truth of the matter asserted and, therefore, were not hearsay.[2] Shortly thereafter, this court decided Williams v. State, 930 N.E.2d 602, 607-10 (Ind. Ct. App. 2010), trans. denied, in which the defendant also argued that the admission of a confidential informant's recorded statements during a controlled buy violated his confrontation rights. We again held that the confidential informant's recorded statements during a controlled buy were not offered by the State to

---

[1] Mays seems to argue that the entire video should have been excluded, not just the confidential informant's statements. Mays does not specify the offending statements of the confidential informant in the recordings. Further, Mays makes no argument regarding his own statements on the video.

[2] The Lehman court held that the informant's description of the controlled buy at the beginning and end of the tape qualified as testimonial and should have been excluded pursuant to Crawford. Lehman, 926 N.E.2d at 40. However, the court concluded that the error was harmless.

prove the truth of the confidential informant's statements.  <u>Williams</u>, 930 N.E.2d at 608.

Further, we noted that the Confrontation Clause does not apply to nonhearsay statements,

even if those statements are testimonial.  <u>Id.</u> at 609.

The Seventh Circuit has reached the same conclusion.  In <u>U.S. v. Tolliver</u>, 454

F.3d 660, 664-66 (7th Cir. 2006), <u>cert. denied</u>, the defendant challenged the admissibility

of audiotapes of a controlled buy where the confidential informant did not testify.  The

Seventh Circuit noted that the defendant's statements on the tapes were admissions by a

party-opponent and, as such, were not hearsay under the Federal Rules of Evidence.

Consequently, <u>Crawford</u> did not prohibit the admission of the defendant's statements on

the tapes.  Similarly, the court held that the confidential informant's statements merely

put the defendant's "admissions on the tapes into context, making the admissions

intelligible for the jury."  <u>Tolliver</u>, 454 F.3d at 666.  The court noted that "[s]tatements

providing context for other admissible statements are not hearsay because they are not

offered for their truth."  <u>Id.</u>  Consequently, the confidential informant's statements were

not hearsay and did not violate <u>Crawford</u> or the Confrontation Clause.[3]  <u>Id.</u>; see also <u>U.S.</u>

---

[3] Mays cites three cases for the proposition that the confidential informant's statements were inadmissible under <u>Crawford</u>.  In <u>U.S. v. Pugh</u>, 405 F.3d 390, 399-400 (6th Cir. 2005), the court held that a police officer's testimony regarding an informant's out-of-court identification of the defendant from a still picture taken from a surveillance video was inadmissible under <u>Crawford</u>.  The court concluded that the identification was testimonial and offered for the truth of the matter asserted.  In <u>People v. Pirwani</u>, 14 Cal.Rptr.3d 673, 681-85 (Ca. Ct. App. 2004), the court held that a victim's videotaped statement to police regarding the crime was inadmissible under <u>Crawford</u> because it was testimonial hearsay.  The victim was unavailable to testify at trial because she had died.  In <u>Jones v. Basinger</u>, 635 F.3d 1030, 1040-43 (7th Cir. 2011), police officers testified regarding an informant's tip that led them to a murder suspect.  The court concluded that the statement was double hearsay, made for the purpose of "helping bring to justice the people responsible for the murders," and used to establish the truth of the matter asserted.  <u>Id.</u> at 1041. Consequently, it was inadmissible under <u>Crawford</u>.  These three decisions are distinguishable.  In each of these cases, the statements at issue were substantive evidence, offered to prove the truth of the matter

11

v. Foster, 701 F.3d 1142, 1150-53 (7ᵗʰ Cir. 2012) (holding that a non-testifying confidential informant's recorded statements during a controlled buy were not hearsay and did not implicate the Confrontation Clause).

We conclude that, even if Mays's appellate counsel had raised Crawford regarding admission of the recordings, the issue would not have been clearly more likely to result in reversal or an order for a new trial. The confidential informant's statements in the recordings were not offered to prove the truth of the matter and were not hearsay. The admission of the recordings did not violate Crawford. Consequently, Mays has failed to demonstrate ineffective assistance of appellate counsel, and the post-conviction court properly denied his petition for post-conviction relief.

### Conclusion

Mays's ineffective assistance of appellate counsel claim fails, and the post-conviction court properly denied his petition. We affirm.

Affirmed.

NAJAM, J., and BAILEY, J., concur.

---

asserted. The confidential informant's statements here were merely offered to give context to Mays's statements and were not offered for the truth of the matter asserted.